UNITED STATES of America
v.
Edward Aguilar GARCIA.

Crim. A. No. SA73CR77.

United States District Court,
W. D. Texas,
San Antonio Division.

April 25, 1973.

William S. Sessions, U. S. Atty., John M. Pinckney, III, Asst. U. S. Atty., San Antonio, Tex., for plaintiff.

Richard R. Devon, San Antonio, Tex., for defendant.

## ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS

SPEARS, Chief Judge.

Edward Aguilar Garcia, defendant, stands charged by indictment, with three counts of unlawful possession of heroin with intent to distribute, and with one count of unlawfully possessing a firearm during the commission of a federal felony, to-wit: the unlawful possession of heroin with intent to distribute. By his motion to suppress, Garcia seeks to suppress evidence of a quantity of heroin and of a pistol, both of which were seized from his person or automobile without warrant.

A hearing was held on defendant's motion on April 17, 1973, at which time the testimony of one witness only, Jose C. Losoya, was taken. The following summary of that testimony should be consid-

ered as this Court's findings of fact for purposes of the determination of the motion to suppress.

## I. *Testimony of Jose C. Losoya*

Jose C. Losoya is employed as a police officer for the city of San Antonio, Texas, and, since May of 1972, has been assigned to the Office of Drug Abuse Law Enforcement. At approximately 2:15 P.M. on January 8, 1973, officer Losoya had occasion to observe a 1965 Pontiac automobile moving in a westerly direction on West Commerce Street in San Antonio. As the car came to a stop at a traffic light at the intersection of Commerce and Zarzamora, Officer Losoya, who was also in an automobile, pulled alongside the Pontiac, at which time he recognized the driver as Edward Aguilar Garcia, a man known to him to be under surveillance because of his association with Rudy Ricondo, a major dealer in narcotics in San Antonio.

As Officer Losoya pulled alongside the defendant's car, he observed that the defendant was counting a large sum of money. At this point, Officer Losoya made a gesture with his hands and head which, according to the officer's testimony, indicated in the parlance of the narcotics trade that he wanted to purchase heroin. Garcia responded with a nod.

The traffic light changed to green and Garcia drove away, with Officer Losoya following him, to a private residence where he left the car and went inside. Officer Losoya then called by radio for other officers, who came to the location and established surveillance.

During the course of the surveillance, two men, not known to Officer Losoya, came to the residence by automobile, went inside, remained for approximately five minutes, and then left. The other officers who had come to the location at Officer Losoya's request attempted to follow the car but it eluded them.

A few minutes after the two men had left, the defendant left the house, got into his car and, followed by Officer Losoya, proceeded to a small shopping center which was located nearby. At the time the defendant drove into the shopping center, Officer Losoya saw Joe Contreras Lopez, also known as "Birdy," standing on the north side of a washateria, which was located in the shopping center, looking in all directions. Officer Losoya had known Lopez for approximately seven or eight years and knew him to be both a heroin addict and a pusher. Garcia motioned to Lopez, who then got into Garcia's car.

At this point, Officer Losoya left his car and walked toward the car in which Garcia and Lopez were seated. As Officer Losoya approached the car it drove off along an alley or driveway on the north side of the building and went around to the back of the shopping center.[1] Federal Agent Gerald Courtney, who by now had joined Officer Losoya returned to his car and drove soya, followed in his car. Officer Losoya around the south side of the building, and upon arriving at the back of the building, saw the defendant's car parked with Agent Courtney's car parked behind it. Officer Losoya parked his car headed in the direction toward the place where the defendant's car was parked.[1A]

---

1. There was no testimony that Garcia or Lopez were aware that Officer Losoya left his vehicle and approached the car. In response to defense counsel's question on cross-examination as to whether the officer could testify that Garcia cut off his engine after stopping to pick up Lopez, Officer Losoya replied, "Yes, sir, I can testify, because as soon as I exited and approached the vehicle, the car started driving off to the rear of the building right away."

This testimony supports an inference that Garcia's original destination was the rear of the building, and that his going there was not in response to Officer Losoya's approaching the car.

1A. It is not clear from the testimony whether Officer Losoya's car was pointed toward the front of the defendant's car or whether the defendant's car was blocked from leaving by Officer Losoya's car.

Both Officer Losoya and Agent Courtney left their cars and approached the defendant's car, Officer Losoya approaching on the passenger's side (Lopez) and Agent Courtney approaching the driver's (Garcia's) side of the car. Losoya had his credentials in his hand and identified himself as a police officer. Agent Courtney stated, "Federal Officers" in a strong voice.

As Officer Losoya approached the car, he observed the defendant make a quick motion to his left waist, and observed a pistol on his waistband. Officer Losoya then drew his gun and proceeded to remove the passenger (Lopez) from the car, while Agent Courtney did likewise with the driver (Garcia). Both men were placed on the ground and were searched. No contraband was found on Lopez, although a pistol and several balloons containing heroin were removed from the defendant, the latter being found in his right coat pocket. In addition, as Officer Losoya was taking Lopez from the car, he saw two plastic packages lying in open view on the console of the car, which were also seized.[2]

Officer Losoya testified that he and Agent Courtney approached the car for the purpose of questioning the men as to their activities and in order "to find out what was going on." He testified that the counting of the money, the nodding of the head by Garcia in response to Losoya's signal, and the moving to the rear of the building at the shopping center, all led him to believe that a narcotics transaction might be in progress. In particular, the fact that Lopez and the defendant moved to a driveway behind the shopping center was typical of a narcotics transaction in that such transactions usually take place in secluded locations.[3]

## II.  *The Legality of the Seizure*

### A.   The Investigative Stop

■   It is well established that a police officer may briefly detain a suspicious person for the purpose of investigating possible criminal behavior even in the absence of probable cause to arrest.  Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).  However, while probable cause is not a prerequisite to an investigative stop, something more than a mere inarticulate hunch on the part of a police officer is required.  Terry v. Ohio, 392 U.S. 1, 22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).  See also Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968).  The standard was set forth thusly in Terry v. Ohio, supra:

> [I]n justifying the particular intrusion, the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion . . . .  And in making that assessment it is imperative that the facts be judged against an objective standard:  would the facts available to the officer at the moment of the seizure or the search "warrant a man of reasonable caution in the belief" that the action taken was appropriate?  392 U.S. 21, 88 S.Ct. 1880.

Accord, United States v. Edwards, 469 F.2d 1362 (5th Cir. 1972).

Thus, assuming that the defendant's automobile was effectively prevented by the position of the officers' cars from leaving the driveway behind the shopping center (see note 1A, supra), the first question for determination is

---

2.  At no point during the testimony on the motion to suppress was it specifically stated that either the balloons or the packages contained heroin.  In his brief, however, defendant refers to contraband which was found on the console and in his pockets.  Since there is no other mention

in the testimony of heroin being found in any other location, the Court will presume for the purposes of this motion that the balloons and packages contained heroin.

3.  The driveway behind the shopping center is not a part of the center's parking area.

whether, under the standard of *Terry*, this detention was justified, for it is well established that the standards of *Terry* apply to the stopping and detaining of automobiles, e. g. United States v. Mallides, 473 F.2d 859 (9th Cir. 1973); United States v. Edwards, supra.

■ Without deciding whether Officer Losoya's observations rose to the level of probable cause, the Court finds that they most certainly would support a reasonable inference that a narcotics transaction was about to take place at the time the detention was made. First, Garcia's acknowledgement of Officer Losoya's hand signal would reasonably have led a person who was familiar with the meaning of the signal, such as Officer Losoya, to believe, at the very least, that Garcia was familiar with the sign and its meaning. Secondly, this observation, when coupled with the observation of Garcia counting money, could reasonably lead one to believe that Garcia, by nodding, was answering the signal so as to indicate his willingness to sell narcotics. Thirdly, Garcia's meeting of Lopez, a known dealer and addict, and thereafter proceeding to a point behind a building, when coupled with the prior observations and Officer Losoya's knowledge that narcotics transactions usually occur in secluded locations, would at the very least have given rise to a reasonable inference that a narcotics transaction was about to be consummated.[4]

In light of this inference, it was entirely proper for Officer Losoya and Agent Courtney to detain Garcia and Lopez by stopping their vehicle, and for the officers to approach the two men for investigatory purposes. As was stated in Adams v. Williams, supra,

> The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply

shrug his shoulders and allow a crime to occur or a criminal to escape . . . . A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time. 407 U.S. 145, 92 S.Ct. 1923.

Defendant points to the holding in Sibron v. New York, 392 U.S. 40, 62, 88 S.Ct. 1889, 1902, 20 L.Ed.2d 917 (1968) that: "The inference that persons who talk to narcotic addicts are engaged in the criminal traffic in narcotics is simply not the sort of reasonable inference required to support an intrusion by the police upon an individual's personal security," as indicating that the intrusion in the instant case was unwarranted. The Court feels that the facts in the case at bar are distinguishable from those in *Sibron*. Granted, the mere fact that the defendant met with Lopez, a known addict, would not justify an investigatory stop under *Sibron*; however, in the instant case, the other actions which Officer Losoya observed, when coupled with the meeting with a known addict and subsequent movement to the rear of the building, would indicate, or at least provide a reasonable basis for an inference, that something more than an innocent meeting with a person who coincidentally happened to be both an addict and a pusher, was at hand. That being the case, the detention of the automobile at the rear of the building, and the approach of the officers were constitutionally permissible.

**B. The Seizure of the Weapon and of the Heroin**

■ *Terry*, *Sibron* and Adams v. Williams teach that there are two prerequisites to a "pat down" or "frisk" search, in the absence of probable cause. The first is a reasonable inference, sufficient

---

4. The Court is unable to attach any significance to the arrival of two unidentified males at the residence. While they may well have been narcotics purchasers, there is simply nothing in evidence to indicate that their arrival and prompt departure was in any way indicative of criminal behavior.

to justify brief detention and investigation, that criminal action has occurred or is about to occur. As discussed above, the first element was present in this case. The second element is that the officer, who is investigating the suspicious behavior of an individual at close range, must also be justified in believing that the person is armed and presently dangerous before he may lawfully conduct even a pat down search for weapons. In other words, even though an officer may have been justified in making an investigatory stop of an individual, he must also have reason to believe the individual is armed and dangerous before he may conduct a search as part of his investigatory stop. Terry v. Ohio, supra 392 U.S. at 30, 88 S.Ct. 1868, accord Adams v. Williams, supra 407 U.S. at 146, 92 S.Ct. 1921. Of course, in many instances, a sufficient basis for an investigatory detention will likewise support a justified belief that the suspect is armed and dangerous.

■ Defendant argues that since the only crime which Officer Losoya could possibly have felt was being committed was not a crime of violence, no intrusion was justified. That which he overlooks, however, is that no pat down or search of any kind occurred until *after* Garcia moved toward his waist and Officer Losoya saw a pistol. Thus, it is not necessary for the Court to determine whether Officer Losoya, in addition to having justification for making an investigatory stop, also had sufficient basis, at the time he made the stop, for a belief that Garcia was armed and dangerous, so as to satisfy the second prerequisite for a pat down.

After seeing the pistol, Officer Losoya clearly was justified in removing Garcia from the car and conducting a search of his person. That being the case, the fruits of that search were lawfully seized and are admissible in evidence.

Likewise, the two packages which were lying in open view upon the console of the automobile were lawfully seized and are admissible in evidence. The officers, at the time of seizure, were at a place where, as discussed earlier, they had a right to be, and as a result, the two packages, in plain view, were lawfully subject to seizure. e. g. Coolidge v. New Hampshire 403 U.S. 443, 465, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), Walker v. Beto, 437 F.2d 1018 (5th Cir. 1971).

Defendant's motion to suppress is denied.