**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Alexander Manuel MALLIDES,
Defendant-Appellant.**

No. 72–1898.

United States Court of Appeals,
Ninth Circuit.

Jan. 22, 1973.

Rehearing Denied Feb. 26, 1973.

J. David Franklin, of Odorico, Franklin & Herring, San Diego, Cal., for defendant-appellant.

Harry D. Steward, U. S. Atty., Stephen G. Nelson, Lyn I. Goldberg, Asst. U. S. Attys., for plaintiff-appellee.

Before KOELSCH, HUFSTEDLER and GOODWIN, Circuit Judges.

HUFSTEDLER, Circuit Judge:

Mallides appeals from a judgment, 339 F.Supp. 1, convicting him for aiding and abetting illegal entry of aliens (18 U.S.C. § 2; 8 U.S.C. § 1325). He argues that the evidence upon which the conviction was based should have been suppressed as the product of an unlawful detention and that the evidence was insufficient to sustain the conviction. We agree with both of his contentions.

About 6:00 p.m. on March 6, 1971, two city police officers were patrolling Airport Road in the City of Oceanside, California. They saw Mallides' 1968 Chrysler Imperial turn right onto Airport Road in the vicinity of the airport. It was dusk, and the headlights were on. As the officers' vehicle passed Mallides' automobile going opposite directions, Officers Frey and Shirley saw that the occupants were six Mexican-appearing males seated three in the front and three in the back seats. Both officers testified that the occupants were sitting very erect and that they did not turn to look at the marked patrol car as it passed. The officers made a u-turn, activated the red light and stopped Mallides' automobile. Upon Officer Frey's request, Mallides produced a valid California driver license. Officer Frey interrogated Mallides' passengers and discovered that they were Mexican nationals without papers admitting them to this country. Officer Frey testified that Mallides gave him permission to examine the automobile trunk. It was empty. In examining the trunk, he saw that the car was equipped with partially inflated air shocks. The aliens testified that Mallides had picked them up at a house in San Diego, California, about 21 hours after they had illegally entered. There was no contrary testimony, and there was no evidence that Mallides had any kind of contact with the aliens before meeting them at the house.

Before the officers stopped him, Mallides was driving normally. No traffic violation is involved. The basis for the stop and the detention was the officers' suspicion that the car contained illegal aliens. The suspicion was based entirely on the officers' fleeting observation that there were six Mexican-appearing men in the car who sat stiffly and who did not look at the patrol unit as it passed. Officer Shirley testified that he made it a practice to stop "all cars with Mexicans in them that appear to be sitting and packed in like people in [Mallides'] car."

The officers testified and we judicially notice that there is a large Mexican-American population in the Oceanside area. Mexican-Americans as well as other Americans regularly ride in automobiles, often more than four in a big sedan. It is impossible to determine from looking at a person of Mexican descent whether he is an American citizen, a Mexican national with proper entry papers, or a Mexican alien without papers.[1]

■■ The threshold issue is the legality of the initial stop and detention. In a federal prosecution, the same constitutional standards apply to the conduct of state police officers as to federal officers. (Elkins v. United States (1960) 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669)[2]. Federal agents cannot constitutionally stop automobiles systematically or randomly on the chance of discovering something illegal. "It would be intolerable and unreasonable if a prohibition agent were authorized to stop every automobile on the chance of finding liquor, and thus subject all persons lawfully using the highways to the inconvenience and indignity of such a

1. Mallides is not of Mexican origin. He is a naturalized citizen, born in Iraq.

2. The stop and detention were illegal under California law applying Fourth Amendment concepts. E. g., People v. Superior Court of Yolo County (1970)

3 Cal.3d 807, 91 Cal.Rptr. 729, 478 P.2d 449; People v. Lingo (1970) 3 Cal.App. 3d 661, 83 Cal.Rptr. 755; People v. Franklin (1968) 261 Cal.App.2d 703, 68 Cal.Rptr. 231; People v. Henze (1967) 253 Cal.App.2d 986, 61 Cal.Rptr. 545,

search." (Carroll v. United States (1925) 267 U.S. 132, 153, 45 S.Ct. 280, 285, 69 L.Ed. 543). The initial intrusion must be justified before we reach the question of the validity of subsequent police conduct of a warrantless search of an automobile. (Coolidge v. New Hampshire (1971) 403 U.S. 443, 463 n. 20, 91 S.Ct. 2022, 29 L.Ed.2d 564, discussing Chambers v. Maroney (1970) 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419.)

■ The Government does not contend that the officers had any probable cause to stop Mallides' car. It argues that circumstances short of probable cause are enough to justify the stopping of a vehicle, detention of its occupants, and investigatory interrogation. The Supreme Court has not yet confronted this question, but it has considered the validity of an officer's stopping, briefly detaining, and interrogating a person encountered on foot. (Terry v. Ohio (1968) 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; Sibron v. New York (1968) 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917). Although a pedestrian and an automobile driver are not in identical circumstances, we see no reason why similar Fourth Amendment standards should not be applied in both situations. A person whose vehicle is stopped by police and whose freedom to drive away is restrained is as effectively "seized" as is the pedestrian who is detained. (Terry v. Ohio, *supra*, 392 U.S. at 16, 88 S.Ct. 1868.)

■ The validity of the stop is tested against two criteria: Was the officers' action justified in its inception? Was the action "reasonably related in scope to the circumstances which justified the interference in the first place"? (*Id.* at 20, 88 S.Ct. at 1879) "[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." (*Id.* at 21, 88 S.Ct. at 1880.) The facts are measured against an objective reasonable man standard, not by the subjective impressions of the particular officer. "Anything less would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches. . . ." (*Id.* at 22, 88 S.Ct. at 1880.)

■ We repeat the articulated facts upon which the officers based the stop: Six Mexican-American appearing males were riding in a Chrysler Imperial at dusk, sitting erectly, and none turned to look at the passing patrol car. From these facts, the officers suspected that the occupants were illegal aliens.

Mallides' conduct was completely innocuous.[3] Tested by any objective standard, there is nothing suspicious about six persons riding in a sedan. The conduct does not become suspicious simply because the skins of the occupants are nonwhite or because they sit up straight or because they do not look at a passing police car.[4]

The Government suggests that the officers had special expertise which escalated the innocent into the potentially criminal because Officer Frey had

3. The Government adds that the officers testified that during the months preceding the stop there had been numerous reports of thefts and burglaries in the vicinity of the airport. That innocent activity occurs in a high crime area provides no basis for converting innocuous conduct into suspicious conduct. (Sibron v. New York, *supra*, 392 U.S. at 62, 88 S.Ct. 1889; Cunha v. Superior Court (1970) 2 Cal.3d 352, 85 Cal.Rptr. 160, 466 P.2d 704.) Moreover, these officers did not purport to make the stop based on any suspicion that the occupants of Mallides'

car were burglars or thieves; the stop was made to investigate the presence of illegal aliens.

4. The "furtive gesture" syndrome has been overextended. (*See* discussion, People v. Superior Court of Yolo County, *supra*, 3 Cal.3d at 817–828, 91 Cal.Rptr. 729, 734–743, 478 P.2d 449, 454–462.) Here, the officers concluded that not looking was suspicious. In People v. Williams (1971) 20 Cal.App.3d 590, 97 Cal.Rptr. 815, the officer testified that defendant's looking at an approaching police car was suspicious.

made 20 to 30 arrests on alien charges in the Oceanside area during the two years preceding this stop. None of the circumstances of those arrests was revealed. Officer Frey did not testify about the number of persons whom he detained during the same time who were not aliens illegally in this country. Officer Shirley described his practice of stopping all cars with Mexican-appearing people in them like those in Mallides' car. Such practices were roundly condemned in Davis v. Mississippi (1969) 394 U.S. 721, 726–727, 89 S.Ct. 1394, 1397, 22 L.Ed.2d 676: "Investigatory seizures would subject unlimited numbers of innocent persons to the harassment and ignominy incident to involuntary detention. Nothing is more clear than that the Fourth Amendment was meant to prevent wholesale intrusions upon the personal security of our citizenry, whether these intrusions be termed 'arrests' or 'investigatory detentions.'" Again, in *Davis*, the victim's description of her assailant as a "Negro youth" was not an objective fact sufficient to permit the inference that petitioner was connected with the crime.

■ Neither the Supreme Court nor this court has ever upheld the legality of a detention based upon an officer's unsupported intuition, and we refuse to do so now.[5]

The stop and detention were illegal, and the fruit of the illegal conduct was inadmissible. It is unnecessary to explore the claimed overbreadth of interrogation or the trunk search.

Evidence to prove the substantive offense was flimsy. With the exclusion of the illegally obtained evidence, the Government's case vanished.

The conviction is reversed with directions to dismiss the indictment.

5. In each case where detention has been upheld, there were objective facts to sustain the policemen's conclusions. *Compare Terry, supra,* upholding the stop, *with Sibron, supra,* invalidating Sibron's stop and upholding that of Peters. *See also* Adams v. Williams (1972) 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (involving a tip by an informer). A sampling of Ninth Circuit cases follows: United States v. Roberts, (9th Cir. 1972) 470 F.2d 858 (border check followed by high speed flight and strong odor of marijuana); United States v. Jackson (9th Cir. 1971) 448 F.2d 963, cert. denied, Willis v. United States, 405 U.S. 924, 92 S.Ct. 970, 30 L.Ed.2d 796 (description of robbers in flight matched that of persons in detained car which was traveling a probable escape route); Wade v. United States (9th Cir. 1972) 457 F.2d 335 (black male detained at entrance of pedestrian tunnel by officers responding to a dispatch that a black male had just attempted to molest children in the same tunnel); Busby v. United States (9th Cir. 1961) 296 F.2d 328 (traffic violation, informer, police radio call); Frye v. United States (9th Cir. 1963) 315 F.2d 491 (traffic violations); Arnold v. United States (9th Cir. 1967) 382 F.2d 4 (eye witness identification); Wartson v. United States (9th Cir. 1968) 400 F.2d 25, cert. denied (1969), 396 U.S. 892, 90 S.Ct. 184, 24 L.Ed.2d 166 (eye witness description); United States v. Fallis (9th Cir. 1969) 414 F.2d 772 (description of robber matching appellant); United States v. Brown (9th Cir. 1970) 436 F.2d 702 (appellant and companions seen wearing gloves and automobile parked in alleyway behind credit union); United States v. Oswald (9th Cir. 1971) 441 F.2d 44 (description of automobile matching that where marijuana found in trunk); United States v. Zubia-Sanchez (9th Cir. 1971) 448 F.2d 1232 (appellant's automobile seen discharging passengers along highway immediately before reaching border patrol checkpoint); Gaines v. Craven (9th Cir. 1971) 448 F.2d 1236 (tip that narcotics were being sold); United States v. Blackstock (9th Cir. 1971) 451 F.2d 908 (report of apparent possession of marijuana).