543 P.2d 425

**The STATE of Arizona, Appellee,**

v.

**Johnny Soto DEAN, Appellant.**

**No. 3246.**

Supreme Court of Arizona,
In Banc.

Dec. 3, 1975.

Bruce E. Babbitt, Atty. Gen., by William J. Schafer III and Grove M. Callison, Asst. Attys. Gen., Phoenix, for appellee.

Lindauer & Logan, P.A., by George Logan III, Phoenix, for appellant.

CAMERON, Chief Justice.

This is an appeal by Johnny Soto Dean from a jury verdict and judgment of guilt to the crime of burglary, second degree, A.R.S. §§ 13–301 and 302, with a sentence of not less than four and a half years nor more than five years.

Defendant asks that the following questions be answered on appeal:

1. Did the police have reasonable suspicion to justify stopping defendant's car?

2. Was it necessary to give defendant his Miranda warnings before asking whether he would consent to a search of his car?

The facts necessary for a determination of this matter are as follows. In March of 1974, City of Phoenix police officers David Nay and William Neill were assigned to a plainclothes selective enforcement detail. The function of these officers is to drive through residential areas in un-

marked cars looking for suspicious activity which might include burglaries and robberies. On the afternoon of 23 March 1974, Officer Nay and Officer Neill were in an unmarked pickup truck driving north on Randolph Road when they observed Dean sitting in a parked car in front of a small apartment complex. A number of factors concerning Dean and his vehicle aroused the suspicion of the police officers. The location of the parked car in front of the apartment complex, its close proximity to three different roads if the driver were required to leave in a hurry, and the fact that Dean appeared very nervous and was moving his head very rapidly from side to side as if he was attempting to watch all directions at one time caused Nay and Neill to conclude that something was amiss and that further observation was warranted.

After passing Dean's car the officers pulled into an empty church parking lot in order to continue their surveillance. Approximately two minutes later a marked patrol car approached Dean's car and he immediately left the area. Officers Nay and Neill followed Dean but got held up in traffic and momentarily lost the vehicle. However, within three minutes Nay and Neill spotted the car heading west on Thomas Road with another male passenger.

Because the officers were in an unmarked truck, they radioed their dispatcher to get a marked unit to stop Dean's car. Patrolman Letcher stopped defendant's car and asked Dean and his passenger, Salas, to get out of the car. One of the officers asked Dean and Salas for identification. Officer Neill observed a pair of channel-lock pliers on the passenger seat and a screwdriver on the floor of the car. Officer Letcher then asked Dean if he could search the vehicle and check the trunk. Dean consented to the search and handed his keys to Officer Neill who conducted the search with the assistance of Officer Letcher. The officers discovered a color television in the trunk. As soon as the officers discovered the television, they read Dean and Salas their Miranda rights.

Both Dean and Salas were then taken to the police station. Salas was arrested when it was discovered that there were two outstanding felony warrants for his arrest, and Dean was released. Dean was arrested about two hours later and charged with second degree burglary when it was discovered that an apartment on North Randolph had been burglarized that afternoon.

On 10 July 1974 the jury found the defendant guilty of second degree burglary. From this judgment defendant appeals.

## DID THE POLICE HAVE REASONABLE SUSPICION?

■ A limited field investigation and detention, not amounting to an arrest, is justified if from the totality of the surrounding circumstances it appears that the detaining officers had reasonable grounds for their action.

Our Court of Appeals has stated:

"The California Supreme Court, since *Terry* [*Terry v. State of Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889], has adopted the following test to determine whether a forced stop for interrogation or investigative purposes is justified: There must be a rational suspicion by the police officer that some activity out of the ordinary is or has taken place, some indication to connect the person under suspicion with the unusual activity, and some suggestion that the activity is related to crime. (citation omitted) We believe that the above is a well founded test in that it allows valid field investigation by the police while at the same time protects the individual citizen's Fourth Amendment rights.

"In light of the above we believe that Officers Bright and Crum were justified in stopping defendant for the purpose of

conducting a limited field interrogation. His action in going to abnormal extremes to avoid uniformed police officers was not only suspicious conduct but also more consistent with criminal than innocent behavior." *State v. Baltier,* 17 Ariz.App. 441, 448, 498 P.2d 515, 522 (1972). See also *Terry v. State of Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *State v. Taras,* 19 Ariz.App. 7, 504 P.2d 548 (1973); *State v. Ream,* 19 Ariz.App. 131, 505 P.2d 569 (1973).

 Dean alleges, however that the stop was invalid because it was made solely because "he was a Mexican male in a predominantly white neighborhood of middle to upper middle-class people." Officer Neill did state:

"And as we approached, the subject just looked completely out of place. The vehicle looked out of place because the front end was smashed up, and he appeared to be very nervous and just the first—you know, when we first observed him we could tell that something wasn't correct. He just didn't look, I mean—he was a Mexican male in a predominantly white neighborhood of—oh, middle to upper-middle class people and—"

The transcript indicates that Dean's ethnic background was only one of several factors which caused the officers to believe that further investigation was necessary. That a person is observed in a ·neighborhood not frequented by persons of his ethnic background is quite often a basis for an officer's initial suspicion. To attempt by judicial fiat to say he may not do this ignores the practical aspects of good law enforcement. While detention and investigation based on ethnic background alone would be arbitrary and capricious and therefore impermissible, the fact that a person is obviously out of place in a particular neighborhood is one of several factors that may be considered by an officer and the court in determining whether an investigation and detention is reasonable

and therefore lawful. *State v. Ruiz,* 19 Ariz.App. 84, 504 P.2d 1307 (1973).

"A line between reasonable detention for routine investigation and detention which could be characterized as capricious and arbitrary cannot neatly be drawn. But due regard for the practical necessities of effective law enforcement requires that the validity of brief, informal detention be recognized whenever it appears from the totality of the circumstances that the detaining officers could have had reasonable grounds for their action. A founded suspicion is all that is necessary, some basis from which the court can determine that the detention was not arbitrary or harassing." *Wilson v. Porter,* 361 F.2d 412, 415 (9th Cir. 1966).

We find no error.

## VALID CONSENT

 Defendant argues that it was necessary for the police officers to give him his Miranda warnings before asking whether he would consent to a search of his car. We disagree. Neither Dean nor Salas was under arrest when Officer Letcher asked Dean if he could search the car and trunk. A review of the transcript indicates that Dean handed his car keys to Officer Neill and voluntarily consented to the search of his car. The officers did not make any threats nor did they employ any form of coercion or intimidation.

We believe that the United States Supreme Court disposed of this matter in a strikingly similar case and one in which no Miranda warnings were given:

"Our decision today is a narrow one. We hold only that when the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily

given, and not the result of duress or co-ercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent. (footnote omitted) Because the California court followed these principles in affirming the respondent's conviction, and because the Court of Appeals for the Ninth Circuit in remanding for an evidentiary hearing required more, its judgment must be reversed." *Schneckloth v. Bustamonte*, 412 U.S. 218, 248–249, 93 S.Ct. 2041, 2059, 36 L.Ed.2d 854, 875 (1973).

We find no error.

Judgment affirmed.

STRUCKMEYER, V. C. J., and HAYS, HOLOHAN and GORDON, JJ., concurring.