653 P.2d 683

STATE of Arizona, Appellee,

v.

Hector Alberto Armenta GRACIANO,
Appellant.

No. 5542–PR.

Supreme Court of Arizona,
En Banc.

Sept. 29, 1982.

Robert K. Corbin, Atty. Gen., Phoenix by Bruce M. Ferg, Asst. Atty. Gen., Tucson, for appellee.

Wayne A. Cypert, Nogales, for appellant.

FELDMAN, Justice.

Appellant was convicted of theft of a vehicle valued at more than $1,000, a class three felony, in violation of A.R.S. § 13–1802(A)(1). He was placed on five years' probation. He appeals, alleging that the trial court erred in denying his motion to suppress. The court of appeals affirmed in a memorandum decision,[1] and we granted review. We have jurisdiction pursuant to Ariz. Const. art 6, § 5(3) and Ariz.R.Crim.P. 31.19, 17 A.R.S. We vacate the order of the court of appeals and reverse the judgment of conviction.

On March 7, 1981, appellant was driving a four-by-four Ford pickup truck on Interstate 19, approximately 18 miles north of the Arizona-Mexico border, near Nogales, Arizona. When first seen by Highway Patrol Officer Gordon Hopke, appellant was headed south toward the border; Officer Hopke was northbound. As soon as he saw appellant's vehicle, the officer made a U-turn in the median, switched on his red, flashing light, and stopped appellant. After the stop, the officer learned that the vehicle was stolen and appellant was then arrested.

At the pretrial hearing on appellant's motion to suppress, the arresting officer testified that appellant had not driven the vehicle in an improper or suspicious manner. No traffic violation or criminal activity of any kind had been observed. The officer admitted that the sole reason for the stop was to determine whether the vehicle was stolen.[2]

Appellant argues that since the stop was investigatory in nature, it was an intrusion which violated his fourth amendment right to be free from unreasonable search and seizure. Appellant and the State agree that if this position is correct, then appellant's arrest was illegal and his conviction should not stand. The only issue presented by this appeal is whether the officer's stop violated appellant's fourth amendment rights.

The seminal case in this area of the law is *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In *Terry*, the United States Supreme Court held that while an investigatory stop of a pedestrian fell short of a technical arrest, it was a restraint on the detainee's freedom of movement which constituted a "seizure" of the person under the fourth amendment.

---

1. *State v. Graciano,* 2 CA–CR 2419, filed February 26, 1982.

2. The stop was made for the purpose of determining whether a crime had been committed, rather than for the purpose of investigating a crime already known to have been committed. This distinction and "random stops" were discussed in *State v. Ochoa,* 112 Ariz. 582, 583–84,

544 P.2d 1097 (1976). This opinion reaches neither the questions presented by random or roadblock-type stops for the purpose of enforcement of traffic laws, nor those presented by stops for investigation of a crime known to have been committed. *Cf. State v. Axley,* 132 Ariz. 383, 646 P.2d 268, 275 (1982).

*Id.* at 16, 88 S.Ct. at 1877. Similarly, an investigatory stop of a motor vehicle constitutes a seizure for fourth amendment purposes. *United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 694, 66 L.Ed.2d 621 (1981); *United States v. Brignoni-Ponce,* 422 U.S. 873, 878, 95 S.Ct. 2574, 2578, 45 L.Ed.2d 607 (1975); *State v. Ochoa,* 112 Ariz. 582, 584, 544 P.2d 1097, 1099 (1976). Such investigatory stops are less intrusive than actual arrests and therefore may be made under circumstances which would not be sufficient to constitute "probable cause" for the issuance of an arrest warrant. *United States v. Brignoni-Ponce,* 422 U.S. at 881, 95 S.Ct. at 2580; *cf. Terry v. Ohio,* 392 U.S. at 26–27, 88 S.Ct. at 1882–83.[3]

■ The facts sufficient to justify an investigatory stop such as the one in question will differ from case to case, but courts agree that a stop must be based upon what is variously described as a "particularized" or "founded" suspicion by the officer, who must be able to state an "articulable reason" for the stop. *United States v. Cortez,* 449 U.S. at 418, 101 S.Ct. at 695; *United States v. Carrizoza-Gaxiola,* 523 F.2d 239, 241 (9th Cir.1975); *State v. Ochoa,* 112 Ariz. at 585, 544 P.2d at 1100 (1976).

■ In *United States v. Cortez, supra,* the United States Supreme Court characterized this analysis as a two-prong totality of the circumstances test. The first part of the test requires an assessment of all the circumstances. *Cortez,* 449 U.S. at 418, 101 S.Ct. at 695. This assessment may be based upon some degree of subjectivity involving the application of the officer's training and experience, plus any number of objective factors such as the modes or patterns of operation of certain kinds of lawbreakers, the officer's observation of suspicious conduct, the suspect's presence near the scene of a recent crime and information received from informers or other officers. *Id.*; W. LaFave, *Search & Seizure, A Treatise on the Fourth Amendment* § 9.3, at 58–107 (1978). An assessment of all the circum-

stances, however, does not include a weighing of the officer's "unparticularized suspicions" or hunches about a suspect or situation. *Terry v. Ohio,* 392 U.S. at 27, 88 S.Ct. at 1883.

■ The second part of the *Cortez* test requires that the above assessment raise a justifiable suspicion that the *particular individual to be detained is involved in criminal activity. Cortez,* 449 U.S. at 418, 101 S.Ct. at 695.

In this case, Officer Hopke has been a patrolman in the Nogales area of Arizona for fourteen years. At the hearing on the motion to suppress, Hopke testified that from past experience he knew that numerous Ford four-by-four trucks and Broncos were stolen and transported to Mexico. In addition, he testified that as a result of "meetings" with Pima County officials he was under the impression that the majority of these vehicles were being stolen by young, Mexican males. Officer Hopke also knew that in 1980 the Arizona Department of Public Safety had compiled statistics concerning vehicles registered in Arizona which were most often stolen. The statistics revealed that the four types of vehicles in Arizona with the highest probability of being stolen were, in descending order, Ford four-by-four pickups, Ford four-by-four Broncos, Chevrolet Camaros, and Ford Vans.

Officer Hopke then testified about the stop of appellant. He stated that as he patrolled northbound on Interstate 19, across the divided highway he observed the appellant's vehicle traveling south. The vehicle was not being driven in any suspicious or unlawful manner. The pickup was, however, a Ford four-by-four and the license plate indicated that the vehicle came from a point farther north than Tucson. Furthermore, Officer Hopke testified that the driver "appeared" to be "Mexican." It is clear from cross-examination, however, that the officer saw very little of the driver. Hopke

---

**3.** But note Justice Douglas' dissenting opinion in *Terry,* pointing out the anomaly that a warrantless stop may be made on less grounds than a stop authorized by warrant. *Terry v. Ohio,* 392 U.S. at 35, 88 S.Ct. at 1887.

could not tell whether the driver was young or old, male or female. When asked how he knew whether the driver was Mexican "rather than Armenian or Syrian," he admitted that he did not know. All he was sure of was that the driver had dark skin. Based upon only this information, the officer stopped appellant.

■ Therefore, the totality of knowledge the officer had before[4] the stop of this driver was that some dark-skinned person, male or female, old or young, was driving toward the Mexican border in a lawful and unremarkable manner, in a vehicle of a type most desired by thieves, with license plates from farther north in Arizona. We hold that this is not sufficient to raise a justifiable suspicion that appellant was involved in criminal activity. These are certainly not the "specific and articulable facts" which will warrant an investigatory stop. *Terry v. Ohio,* 392 U.S. at 21, 88 S.Ct. at 1880. Further, these circumstances apply to a large group of presumably innocent travelers. To uphold the stop in question on the basis of these observed circumstances would subject many innocent individuals to just the type of intrusions prohibited by the fourth amendment.

■ Most importantly, we cannot agree that in these circumstances the color of the skin of the driver could raise a reasonable suspicion that the appellant was engaged in wrongdoing. There was no information in the officer's possession to indicate that the particular vehicle had been stolen which would have justified him in assuming that whoever was in possession of the truck might be a thief. We know of no statistics which would indicate that dark-skinned Mexican-Americans[5] are more likely to be automobile thieves than light-skinned ones, nor that Mexican-Americans are more likely to be automobile thieves than Irish-Ameri-

cans, Polish-Americans, or any other subdivision of Americans.

A similar question was considered in *United States v. Pena-Cantu,* 639 F.2d 1228 (5th Cir.1981), where immigration agents stopped defendant's car and another vehicle on the following facts:

> (1) [T]he travellers were proceeding in a northerly direction away from Mexico toward Houston; (2) the occupants of both cars were adult males of Hispanic appearance; (3) the passengers in the back seat were sitting low as if to avoid detection; (4) the occupants did not look like tourists; (5) the cars were of the type often used by smugglers.

*Id.* at 1229 (footnote omitted). The Fifth Circuit held that the facts were unquestionably insufficient to justify an investigatory seizure. *Id.* at 1229–30.

In *United States v. Mallides,* 473 F.2d 859 (9th Cir.1973), police officers in Oceanside, California stopped the defendant's vehicle upon the following facts: "Six Mexican-American appearing males were riding in a Chrysler Imperial at dusk, sitting erectly, and none turned to look at the passing patrol car. From these facts, the officer suspected that the occupants were illegal aliens." *Id.* at 861.[6] The court stated:

> [Defendants'] conduct was completely innocuous. Tested by any objective standard, there is nothing suspicious about six persons riding in a sedan. The conduct does not become suspicious simply because the skins of the occupants are non-white or because they sit up straight or because they do not look at a passing police car.
>
> . . . .
>
> Neither the Supreme Court nor this court has ever upheld the legality of a detention based upon an officer's unsup-

---

**4.** The stop may not be justified by information obtained afterward. *United States v. Morrison,* 546 F.2d 319 (9th Cir.1976).

**5.** Of course an officer observing a vehicle on the road, particularly across a divided highway, has no way to determine whether the driver is a "Mexican male" or an American male with a distant ancestor who happened to be a Mexican

citizen, or simply an American male who, for whatever reason, has been genetically endowed with dark skin.

**6.** In fact, the court noted that Mallides was not of Mexican origin. He was a naturalized citizen, born in Iraq. 473 F.2d at 860 n. 1.

ported intuition and we refuse to do so now.

*Id.* at 861–62 (footnotes omitted).

■ To paraphrase the Ninth Circuit in *Mallides,* neither the Supreme Court of the United States nor this court has ever upheld the legality of a detention or stop based upon an officer's intuition supported by little more than the race or ethnic background of the detainee.[7] *Id.* at 862; *see Davis v. Mississippi,* 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969).

■ The State argues that the statistics from the Department of Public Safety, along with the information Officer Hopke said he had received from meetings and discussions with other highway patrol officers, constitute a "profile" similar to that used in *State v. Ochoa,* 112 Ariz. 582, 544 P.2d 1097 (1976). The formal profile examined in *Ochoa* is clearly distinguishable from the information used by Hopke in this case.

In *Ochoa,* we upheld a vehicle stop on the basis of a written profile developed at a meeting of peace officers in May of 1974. That profile was compiled on the basis of information received from 40 representatives of various state and federal law enforcement agencies and an analysis of 10,-000 vehicle thefts in the Phoenix area. We held that stops made because a driver and vehicle fit that profile were "warranted by specific and articulable facts taken together with rational inferences therefrom."[8] *Id.* at 586, 544 P.2d at 1101.

In this case, however, there is no written profile. It is not even clear what the elements of this so-called profile are. This became clear when the court questioned Hopke about the elements of the "profile."

THE COURT: What was the profile?

THE WITNESS: It was Ford pickups, young Mexican male drivers, single driver, young individual. The majority of the profiles was young Mexican drivers, Mexican males. Four-by-fours were the main item that they, we were interested in.

THE COURT: Was there some agreement established as to how many of these items they had to fit before you would decide to stop them?

THE WITNESS: I believe it was mainly the type of driver, the type of vehicle, whether the driver more or less fit the described vehicles [sic].

The statistics which the State submitted and which were part of the record below concerned only the type of vehicle "pre-

---

7. We do not hold today, however, that race or ethnic background can never be a part of the totality of circumstances used to justify a stop. For example, information that a robbery has just occurred and that the perpetrator was a blond, white man seen leaving the scene in a blue car might justify an officer in stopping a blond male driving a blue car, while a black man driving that same color car might not be stopped. Likewise, information that a group of Mexican Nationals are planning an illegal crossing of the border at a particular place might be part of the circumstances considered by an officer in stopping a group of Hispanic-appearing individuals, while a similar group of individuals of non-Hispanic appearance in the same place might not be stopped. *United States v. Cortez, supra. Cf. United States v. Brignoni-Ponce, supra.* Similarly, enforcement of immigration laws often involves a relevant consideration of ethnic factors. See *State v. Becerra,* 111 Ariz. 538, 534 P.2d 743 (1975); *but cf. United States v. Pena-Cantu,* 639 F.2d 1228 (5th Cir.1981). These situations are considerably different from the case at bench. We indulge in no assumption that car thieves, rob-

bers and other criminals are generally likely to be of any particular race or ethnic background. The State has not urged that such assumptions should be made, and Officer Hopke did not testify to any statistics to the contrary. Thus, in this, as in the ordinary case, the mere fact that an individual is of a specific race, nationality or ethnic background is not a reasonable ground for a founded suspicion which will justify a stop and detention. To the extent that *State v. Ruiz,* 19 Ariz.App. 84, 504 P.2d 1307 (1973), might be read to the contrary, it is disapproved. *Cf. State v. Dean,* 112 Ariz. 437, 543 P.2d 425 (1975), upholding a stop even though the officer's initial suspicion was aroused by ethnic factors, among others. However, in *Dean* the officer did not stop the defendant because of such factors. He merely kept the defendant under surveillance and later ordered the stop because of the defendant's overt, suspicious conduct.

8. *Ochoa* must be qualified in light of *United States v. Cortez, supra.*

ferred" by thieves and contained no information with regard to the type of thief likely to be found with such a vehicle. Aside from the officer's unsupported statement, no facts in the record establish the other elements of the profile. The stop in this case was not the result of the formal statistical analysis used in *Ochoa*. We can only conclude that this is not a true profile case and the State's reliance on *Ochoa* is misplaced.

The circumstances here make it clear that there was no justified, founded suspicion that appellant was engaged in criminal activity. As a result, the stop and subsequent arrest of appellant violated his fourth amendment rights.

Accordingly, the judgment of conviction is reversed, the Memorandum Decision of the court of appeals is vacated, and the case is remanded to the trial court for further proceedings consistent with this opinion.

GORDON, V.C.J., and HAYS and CAMERON, JJ., concur.

HOLOHAN, Chief Justice, specially concurring.

I concur in the result.