764 P.2d 1155

The STATE of Arizona, Appellant,

v.

**Jo Ann Patricia MAIN aka Jo Ann Patricia Mesiano and Michael Anthony Soltys aka Michael Mars, Appellees.**

Nos. 2 CA–CR 88–0144, 2 CA–CR 88–0145.

Court of Appeals of Arizona, Division 2, Department A.

Nov. 8, 1988.

Reconsideration Denied Dec. 7, 1988.

Robert K. Corbin, Atty. Gen., Phoenix, Stephen D. Neely, Pima County Atty. by Thomas J. Zawada, Tucson, for appellant.

Harold L. Higgins, Pima County Public Defender, Tucson by John F. Palumbo, for appellee Main.

Edward H. Laber, Tucson, for appellee Soltys.

## OPINION

HOWARD, Judge.

In this consolidated appeal the state contends the trial court erred in granting appellees' motions to suppress. We do not agree and affirm.

The evidence at the hearing on the motion to suppress shows that Stephen Anderson was the owner of the residence at 180 W. Catalina Shadows and had leased the residence to Bob Gates. This lease was terminated at 12:00 a.m. on August 31, 1987. Gates notified Anderson approximately one month before the expiration of the lease that he was leaving and that appellees would be living there for the balance of the lease term and instructed Anderson to give the cleaning deposit to appellees at the expiration of the lease. During the final month of the lease, Anderson saw appellees living at the residence.

On the morning of September 1, 1987, the day after the lease expired, Anderson arrived at the residence to begin cleaning it for the next tenant. The appellees were not there. As Anderson was loading trash into his truck, appellees appeared and began to complain that Anderson was taking their things. Anderson answered that they had not timely moved out of the residence and a dispute ensued leading to the arrival of some police officers shortly thereafter. The officers mediated the argument and the parties agreed that the appellees would move out by 2:00 p.m. When Anderson returned at 2:00, appellees were still there and Main again called the Pima County Sheriff's Department.

Officer Cleburn overheard a call dispatched over his car radio regarding a landlord-tenant dispute. The reporter of the call was said to be Jo Ann Mesiano. Cleburn knew that appellee Main had an outstanding felony arrest warrant and used the name Jo Ann Mesiano as an alias. Cleburn radioed this information and a description of Main to the police officers who were en route to handle the dispute.

When Cleburn arrived at the residence he found three police officers inside with appellees Main and Soltys. Cleburn recognized Main as the person for whom the felony warrant had been issued. She was arrested and taken outside. Also outside the residence at this time were the landlord and two unidentified persons who were loading items into a car.

Inside the residence, Cleburn was told by three police officers in the residence that they had already searched Soltys for weapons and found none and that they had already searched the residence and found no one there but the appellees. Cleburn told Soltys to remain in the living room until the landlord-tenant problem was resolved.

Officer Cleburn decided to conduct a second search. He wanted to see for himself if there was anyone else in the house or if there were any weapons around. Cleburn made a cursory search of all the rooms in the residence. He saw, in plain view, a case in the living room where Soltys was sitting. He recognized this case as being the type which contained O'Haus Scales, commonly used for weighing quantities of drugs. He asked Soltys what was in the case and Soltys voluntarily opened the case and exposed them. He also noticed a bag of firearms in the living room and a large quantity of ammunition. Cleburn found marijuana residue on a table in the bedroom, a marijuana cigarette butt on the counter in the front bathroom and a burnt spoon with a small amount of cotton in it in a partially opened drawer of a jewelry box located in the bedroom.

Based on these findings, Cleburn phoned the Honorable John G. Hawkins, a Pima County Superior Court judge, and obtained a search warrant. This search of the premises resulted in the seizure of a box containing marijuana, narcotics paraphernalia, a loaded handgun and an ammunition box which contained LSD and another illicit drug.

At the motion to suppress, the state argued that appellees had no standing to challenge the searches because they had no legal right to be on the premises at the time of the search and they had not established any possessory interest in the items seized. The state further argued that Cleburn's initial search of the apartment was a valid "cursory sweep" of the residence and his second search was based on a valid search warrant.

The trial court granted the motion to suppress stating:

> While the court recognizes the need for officer safety, the court cannot find anything to justify the second search of the premises for people who may be there when one has already been conducted and concluded, and at the time of the second search the suspects presented no danger to the officers as they were under control.

The state argues: (1) appellees had no standing to assert a Fourth Amendment violation; (2) appellees failed to establish a privacy expectation in the particular area searched and in the items seized; and (3) Cleburn's cursory sweep was necessary and legal, thus authorizing him to seize illegal items in plain view.

■ A defendant's right to challenge the admissibility of evidence on Fourth Amendment grounds depends on whether that defendant had a reasonable expectation of privacy in the areas of search, in relation to the items seized. *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). When the appellees took possession of the residence with the landlord's knowledge, they became tenants under Arizona law. See A.R.S. § 33–1310(11) and (15). In *United States v. Gomez*, 770 F.2d 251, 255 (1st Cir.1985), the court stated that the following factors are relevant to a privacy expectation: "possession or ownership of the area searched or the property seized; prior use of the area seized or the property seized; legitimate presence in the area searched; ability to control or exclude others' use of the property; and a subjective expectation of privacy."

■ On September 1, 1987, the appellee/tenants were in possession without the landlord's consent. In Arizona the landlord cannot use self-help to eject hold-over tenants. His only remedy is to bring an action for possession. See A.R.S. §§ 33–1374 and 33–1375. Until appellees were evicted by legal process the residence was still their home and still their castle. Neither the landlord nor the police had any right on September 1 to enter without their consent. There is no question that appellees had standing to assert their Fourth Amendment rights, and this standing extended to all the rooms in the house and to all objects in the house.

■ Pursuant to Rule 15, Rules of Criminal Procedure, 17 A.R.S., the appellees stated their defense would be the state's failure to prove the elements of the offenses beyond a reasonable doubt. The state claims that this assertion deprives appellees of standing to assert their Fourth Amendment rights. This contention is totally devoid of merit. The burden of proof

in a criminal case is always on the state and the defendant does not waive these rights by putting the state to its proof.

We next come to Cleburn's search. If the search was unlawful the evidence found as a result of it, including the evidence found pursuant to the search warrant, was properly suppressed. See *Alderman v. United States*, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). As an exception to the warrant requirement of the Fourth Amendment, a warrantless protective sweep of a residence by a police officer is permitted under the exigent circumstances exception if the officer is lawfully inside the residence and if there are reasonable grounds for the protective sweep at the time it is made. *United States v. Owens*, 782 F.2d 146 (10th Cir. 1986); *United States v. Salvador*, 740 F.2d 752, 759 n. 7 (9th Cir.1984); *United States v. Whitten*, 706 F.2d 1000 (9th Cir.1983), *cert. denied*, 465 U.S. 1100, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984). Protective sweeps are appropriate only where officers reasonably perceive an immediate danger to their safety. *Id.* Here, there was no evidence that the officers were in immediate danger. A search of the premises had already been made. Cleburn testified that he conducted the second search because it was his habit to do so, but he never testified that he perceived any immediate danger.

Finally, the state contends that even if the searches conducted by Cleburn violated the Fourth Amendment, the evidence in those searches was admissible because it was obtained as a result of a "good faith mistake or technical violation" under A.R.S. § 13–3925(B). Since the state failed to raise this issue in the trial court, it has waived its consideration on appeal. *State v. Brita*, 158 Ariz. 121, 761 P.2d 1025 (1988).

AFFIRMED.

LIVERMORE, P.J., and HATHAWAY, J., concur.