812 P.2d 1064

**STATE of Arizona, Appellant,**

v.

**Voatress MULLEN, Jr., Appellee.**

**No. 1 CA–CR 88–980.**

Court of Appeals of Arizona, Division 1, Department C.

Dec. 11, 1990.

Review Denied July 10, 1991.

Richard M. Romley, Maricopa Co. Atty. by H. Allen Gerhardt, Deputy Co. Atty., Phoenix, for appellant.

Dean W. Trebesch, Maricopa County Public Defender by James L. Edgar, Deputy Public Defender, Phoenix, for appellee.

## OPINION

FIDEL, Presiding Judge.

Voatress Mullen, Jr. (defendant) was charged by information with possession of a narcotic drug and possession of drug paraphernalia. After an evidentiary hearing, the trial court granted his motion to suppress incriminating evidence. Thereafter, the state moved to dismiss without prejudice and filed this appeal. We have jurisdiction pursuant to Ariz.Rev.Stat.Ann. § 13–4032(7) (1989).

## FACTS

As a Phoenix police officer drove past a bus stop on Seventh Avenue, he noticed defendant leaning forward to watch the police car's course. The officer returned, parked his car, approached defendant on foot, and asked why defendant had been staring at his car. Defendant replied that he was curious whether the officer was using his computer terminal. The officer asked for identification, and defendant pro-

duced his driver's license. As the officer held defendant's license, he asked about a backpack defendant was carrying and looked inside after defendant gave consent. The officer saw sweat clothes on top and did not look beyond them. When defendant's bus arrived, the officer returned defendant's license and defendant left. The officer then ran defendant's name through the computer, discovered an outstanding warrant, stopped the bus at the next bus stop, and took defendant into custody. A search of defendant's backpack produced drugs and drug paraphernalia.

On appeal, we address two issues: (1) Did the trial judge abuse his discretion by finding that defendant had been subjected to an illegal detention? (2) Did the trial judge properly order suppression of the evidence that the search of defendant's backpack revealed?

## JUSTIFIABLE SUSPICION

■ The brief detention of defendant was clearly investigatory in purpose. The officer sought and achieved identification and a superficial inspection of defendant's backpack. An investigatory detention is improper, however, unless an officer's prior assessment of the circumstances "raise[s] a justifiable suspicion that the particular individual to be detained is involved in criminal activity." *State v. Graciano*, 134 Ariz. 35, 37, 653 P.2d 683, 685 (1982) (quoting *United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981) (emphasis omitted)).

In a recent decision outlining the civil liability of police officers for illegal detention, the Ninth Circuit Court of Appeals explained:

> If there is one irreducible minimum in our Fourth Amendment jurisprudence, it is that a police officer may not detain an individual simply on the basis of suspicion in the air. No matter how peculiar, abrasive, unruly or distasteful a person's conduct may be, it cannot justify a police stop unless it suggests that some specific crime has been, or is about to be, committed, or that there is an imminent danger to persons or property. Were the law

any different—were police free to detain and question people only on their hunch that something may be amiss—we would hardly have a need for the hundreds of founded suspicion cases the federal courts decide every year, for we would be living in a police state where law enforcement officers, not the courts, would determine who gets stopped and when.

*Duran v. City of Douglas*, 904 F.2d 1372, 1378 (9th Cir.1990).

■ In this case, defendant's behavior neither indicated involvement in a specific crime nor threatened imminent danger. He was not near the scene of a recent crime, nor was his stop the product of information the officer had received from informers or other officers. Defendant merely watched the officer's passing car in a way that caught the officer's attention. The officer could describe no more than the "suspicion in the air" that *Graciano* and *Duran* condemn as insufficient basis for a stop.

■ It does not justify the stop that defendant's identification proved fruitful in uncovering an outstanding warrant and in leading to the discovery of evidence of a present crime. A detention must be justifiable based on the officer's information and observations at the time, not by information later obtained. *United States v. Morrison*, 546 F.2d 319, 320 (9th Cir.1976). The Supreme Court has further explained:

> [E]ven assuming that [the purpose of crime prevention] is served to some degree by [an officer's] stopping and demanding identification from an individual without any specific basis for believing he is involved in criminal activity, the guarantees of the Fourth Amendment do not allow it. When such a stop is not based on objective criteria, the risk of arbitrary and abusive police practices exceeds tolerable limits.

*Brown v. Texas*, 443 U.S. 47, 52, 99 S.Ct. 2637, 2641, 61 L.Ed.2d 357 (1979).

The state urges us to find, however, that the officer required no justifiable suspicion to confront defendant and request identifi-

cation. Citing *I.N.S. v. Delgado,* 466 U.S. 210, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984), the state argues that defendant was not in fact detained and that his compliance with the officer's request for identification was no more than a "consensual encounter" without Fourth Amendment implications.

■ We disagree. In *Delgado,* I.N.S. agents questioned employees and requested immigration papers from some at factories of an employer that the agency suspected of systematically employing illegal aliens. The Supreme Court declined to find that the I.N.S. had seized the entire work force. Instead it treated the individual interviews as consensual encounters that did not ripen into detention. 466 U.S. at 219, 104 S.Ct. at 1764. In *Delgado,* however, the I.N.S. had probable cause to believe that a number of illegal aliens were working at the factory sites that it had chosen. Indeed, the agency had obtained a warrant to search the first two factory sites that it surveyed and obtained the employer's consent to survey the third. *Id.* at 212, 104 S.Ct. at 1760. Thus, we do not read *Delgado* to approve a request for identification based, as here, on no more than suspicion in the air.

The trial court in this case heard the witnesses, evaluated the evidence, and permissibly determined that the stop of defendant was non-consensual. Judge Brown stated that he did not understand the law to permit the police, with no founded suspi-

cion, "to stop at every bus stop and request any person to display identification." Nor do we. In the words of *Brown v. Texas,* we concur in the trial court's determination that a stop under these circumstances "exceeds tolerable limits." [1]

## SUPPRESSION

■ The state argues on appeal that even if this were an illegal stop, the outstanding warrant provided an independent, untainted source for the evidence.[2] The state did not argue this position to the trial court, and has thus waived appellate review. *State v. Brita,* 158 Ariz. 121, 124, 761 P.2d 1025, 1028 (1988).[3]

In argument before the trial court, counsel focused exclusively on the question whether defendant was illegally detained; both counsel assumed in their arguments that the propriety of suppression turned entirely on that question. We have upheld the trial court's conclusion that the initial stop and request for identification violated the Fourth Amendment, and we uphold the trial court's decision to suppress the evidentiary products of that encounter. *Whitely v. Warden,* 401 U.S. 560, 568–69, 91 S.Ct. 1031, 1037, 28 L.Ed.2d 306 (1971) (evidence seized after unconstitutional arrest should have been suppressed); *United States v. Johns,* 891 F.2d 243, 245 (9th Cir.1989) (marijuana obtained as a result of identification at illegal stop was properly suppressed); *State v. Main,* 159 Ariz. 96, 99, 764 P.2d 1155, 1158 (App.1988) ("If the search was unlawful the evidence found as

---

1. We rest the decision in this case explicitly on federal, not state, constitutional grounds. We do not separately consider whether the police conduct in these circumstances exceeded tolerable limits under article 2, § 8 of the Arizona Constitution ("No person shall be disturbed in his private affairs, or his home invaded, without authority of law"), because the defendant has raised only a federal, not a state constitutional challenge. *See* Feldman & Abney, *The Double Security of Federalism: Protecting Individual Liberty Under the Arizona Constitution,* 20 Ariz. St.L.J. 115, 146 (1988) ("If the record raises a state constitutional issue, and the text of the applicable state provision is significantly different from the analogous federal clause, Arizona judges must ... consider the impact ... of our state constitution.").

2. *See Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 392, 40 S.Ct. 182, 183, 64 L.Ed. 319

(1920) (facts illegally "obtained [do not] become sacred and inaccessible. If knowledge of them is gained from an independent source they may be proved like any others.").

3. We note, however, that the outstanding warrant was not an "independent source"; its discovery followed directly from the initial stop. Achieving defendant's identification during the first, improper, encounter, the officer discovered the warrant alleged to justify the subsequent, fruitful search. Although the initial stop did not render the warrant itself forever "sacred and inaccessible," its execution was tainted by immediacy and the absence of intervening circumstances. *See Dunaway v. New York,* 442 U.S. 200, 218–19, 99 S.Ct. 2248, 2259–60, 60 L.Ed.2d 824 (1979) (confession that followed closely on illegal arrest, without intervening circumstances, was properly excluded).

**250**

a result of it ... was properly suppressed.").

## CONCLUSION

For the reasons stated in this opinion, the trial court's order of suppression is affirmed.

GERBER and EUBANK, JJ., concur.