927 P.2d 776

**STATE of Arizona, Appellee,**

**v.**

**Rodolfo GONZALEZ–GUTIERREZ, Appellant.**

**No. CR–96–0030–PR.**

Supreme Court of Arizona, En Banc.

Dec. 5, 1996.

Grant Woods, Attorney General, Phoenix by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, Consuelo M. Ohanesian, Assistant Attorney General, for Appellee.

Susan A. Kettlewell, Pima County Public Defender, Tucson by Lori J. Lefferts, Assistant Public Defender, for Appellant.

## OPINION

JONES, Justice.

Defendant Rodolfo Gonzalez–Gutierrez was charged with possession and transportation of marijuana for sale. Prior to trial, defendant moved to suppress all evidence seized from his automobile, alleging violation of his rights under the Fourth Amendment to the United States Constitution and article II, section 8 of the Arizona Constitution.[1] The trial court denied the motion and proceeded to trial, resulting in convictions on two counts of possession and transportation. In a memorandum decision, the court of appeals upheld the trial court's denial of defendant's motion to suppress and affirmed the convictions. We have jurisdiction pursuant

---

**1.** On appeal, defendant stated that he had moved to suppress the evidence for violation of both his state and federal constitutional rights. Although his motion to suppress referred only to the Fourth Amendment, defendant joined in his co-defendant's motion to suppress, which referred to the Arizona Constitution. In its memorandum decision, the court of appeals referred only to United States Supreme Court cases interpreting the Fourth Amendment. Because the federal constitution controls our review of searches conducted by federal agents, though the same result would obtain under state law, we analyze defendant's rights under the Fourth Amendment. *See Elkins v. United States,* 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960); *State v. Bolt,* 142 Ariz. 260, 689 P.2d 519 (1984); *State v. Mollica,* 114 N.J. 329, 554 A.2d 1315, 1327 (1989) ("state constitutions do not control federal action"); *State v. Bradley,* 105 Wash.2d 898, 719 P.2d 546, 548–49 (1986) (declaring that "neither state law nor the state constitution can control [U.S. Customs officials'] conduct").

to Ariz. Const. art. VI, § 5(3), A.R.S. § 12–120.24, and Ariz.R.Crim.P. 31.19. We reverse the denial of defendant's motion to suppress, vacate the court of appeals' memorandum decision, and remand the case to the trial court for further proceedings consistent with this opinion.

## FACTS

Agent Ramon Rojas of the Border Patrol arrested defendant at 8:15 a.m. on July 7, 1994 as the latter approached the City of Tucson, westbound on Interstate 10. Rojas, whose primary responsibility was the detection and apprehension of illegal aliens, was observing the morning rush hour traffic from a marked car parked in the median at milepost 277. Defendant drove past Rojas' car and glanced at Rojas "out [of] the corner of his eye."

Although Rojas had only a few seconds to observe defendant's passing car, he noticed that defendant and his passenger both appeared to be Hispanic, that defendant was driving at the same speed as other vehicles on the road, and that the passenger was slouched in his seat appearing to be asleep. After Rojas entered traffic to follow defendant's car, defendant veered slightly onto the shoulder. Then, as Rojas gained on defendant, defendant scratched his head. Rojas pulled alongside defendant's vehicle and looked at him, but neither the defendant nor his passenger looked back. Defendant stopped scratching his head and appeared to grasp the steering wheel with a tight grip. Soon thereafter, Rojas learned by radio dispatch that defendant's vehicle was currently registered to a person in Chandler, Arizona with a non-Hispanic name.

By reason of these observations, Rojas suspected that defendant and his passenger may have been illegal aliens. He thus stopped defendant at milepost 270, within the Tucson metropolitan area. Arriving at the stopped car to question defendant about his nationality and residential status, Rojas observed two bales of marijuana in plain view

on the back seat. The presence of the bales in the vehicle became the subject of defendant's criminal indictment and convictions.

## STANDARD OF REVIEW

■ Whether there is a sufficient legal basis on which to justify a vehicular stop by a Border Patrol agent on the open highway is a mixed question of law and fact. *See Pullman–Standard v. Swint,* 456 U.S. 273, 289 n. 19, 102 S.Ct. 1781, 1790 n. 19, 72 L.Ed.2d 66 (1982); *see also State v. Winegar,* 147 Ariz. 440, 445, 711 P.2d 579, 584 (1985). We therefore give deference to the trial court's factual findings, including findings regarding the agent's credibility and the reasonableness of inferences that he drew, but we review *de novo* the trial court's ultimate legal determination. *Ornelas v. United States,* —— U.S. ——, ——, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996); *State v. Hyde,* 186 Ariz. 252, 275 n. 7, 921 P.2d 655, 678 n. 7 (1996)(citing *United States v. Kurt,* 986 F.2d 309, 311 (9th Cir.1993) (trial court's "good faith" determination reviewed *de novo* )).

## DISCUSSION

■ An investigatory stop of a motor vehicle constitutes a seizure under the Fourth Amendment, but because such stops are less intrusive than arrests, they do not require the probable cause necessary to issue an arrest warrant. *United States v. Brignoni–Ponce,* 422 U.S. 873, 878, 881, 95 S.Ct. 2574, 2578, 2580, 45 L.Ed.2d 607 (1975). Nevertheless, because Fourth Amendment protection is fully applicable to an investigatory stop, the "totality of the circumstances" must provide "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez,* 449 U.S. 411, 417–18, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981).

We are aware of the recent decision of the United States Supreme Court in *Whren v. United States,* —— U.S. ——, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).[2] The instant case is

---

**2.** *Whren* involved traffic violations that the officers had observed and were able to articulate with particularity. While the violations themselves could have resulted in appropriate civil

penalties, the officers believed the vehicle's occupants were engaged in other criminal behavior as well, and used the observed violations as a pretext to search the vehicle for evidence of other

easily distinguished from *Whren* because here the stop did not involve an observed traffic violation and was not made as a pretext for searching defendant's car for evidence of other criminal activity. Agent Rojas simply stopped defendant's car because he instinctively suspected that defendant and his passenger were illegal aliens.

According to Rojas' testimony, the stop was based on several factors, and, in denying the motion to suppress, the trial court stated that taken separately "the individual factors would not have been a sufficient basis [for stopping defendant] but, considered ... together, it [was] ... clear the agent had probable cause to stop the vehicle."[3] The court of appeals affirmed, stating that "based upon all the circumstances, the officer's observations led to the reasonable conclusion that a stop of the vehicle was justified." Review of all the facts in light of constitutional standards applicable to an investigatory highway stop leads this court to conclude otherwise.

■ In *Cortez*, the Supreme Court established the test for determining the legality of automobile stops. 449 U.S. at 418, 101 S.Ct. at 695. Like the instant case, *Cortez* involved an immigration stop by federal Border Patrol agents. We read *Cortez* as imposing on courts the duty to apply a two-part analysis of the "totality of the circumstances" which led to the investigatory stop. Under the first part, a court evaluates subjective elements, such as the agent's training and

experience, as well as objective elements, which include criminal profiles and the agent's actual observation of suspicious conduct. *Id.* We employed the *Cortez* test in *State v. Graciano*, 134 Ariz. 35, 37–38, 653 P.2d 683, 685–86 (1982). We emphasized, however, that the first part of the test could not be met simply by attempting to validate an officer's "unparticularized suspicions" or by attaching legal significance to mere intuitive hunches. *Graciano*, 134 Ariz. at 37, 653 P.2d at 685 (quoting *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968)).

Moreover, under the second part of the test, the circumstances must support a justifiable suspicion, that is, there must be an evidentiary indicator suggesting that the subject of the automobile stop was involved in criminal activity. *Cortez*, 449 U.S. at 418, 101 S.Ct. at 695; *Graciano*, 134 Ariz. at 37, 653 P.2d at 685.[4]

In this case, Agent Rojas testified that he had six years' experience as a Border Patrol agent, of which about eighteen months were in the Tucson area. He made the stop because he suspected that defendant was an illegal alien. Yet, the facts offered by Rojas in support of the notion that defendant's behavior was typical of aliens illegally entering the United States were: (1) defendant glanced at the marked Border Patrol vehicle out of the corner of his eye; (2) the passenger slouched in his seat, perhaps pretending

---

crimes. The defendant argued that the stop was invalid because it was used to investigate behavior other than the traffic violations for which the stop was made. The Court rejected the notion that a pretextual stop violates the Fourth Amendment and thus validated the stop strictly on the basis of the observed, though unrelated, violations.

3. The record of the suppression hearing contains the following slightly different formulation of the trial court's findings: "I think the individual factors that were considered by the officer in and of themselves probably ... individually, would not have been sufficient *and perhaps even with a couple of other factors*, but when taking all of them and putting them together, I think it's clear that he had probable cause to stop the vehicle ....." (emphasis added).

4. *State v. Rogers*, 186 Ariz. 508, 924 P.2d 1027 (1996), recently decided by this court, involved a

pedestrian stop by local police officers and an attempted interrogation of the defendant at the scene of the stop. The police observed no criminal activity, although they later found a small quantity of illegal substance near the scene. The majority of this court concluded on the facts that Rogers could not reasonably have felt free to disregard the police, and that his abrupt flight from the scene and the ensuing chase were factors which evidenced Rogers' state of mind as well as the officers' intent to detain. Because of the absence of reasonable suspicion of criminal activity, this court held that an unlawful seizure had occurred. The holding in the instant case is consistent with *Rogers*, both as to the rationale and the result. Indeed, certain factors which prompted the *Rogers* dissent, *i.e.*, the nature of the officers' questions and the defendant's flight from the scene, were not present in the instant case. Here, Agent Rojas' interrogation of defendant was not an issue, and defendant did not flee or otherwise attempt to evade the officer.

to be asleep; (3) defendant drove at the same speed as the rest of traffic; (4) the incident occurred during the morning rush hour; (5) defendant moved slightly onto the right shoulder when Rojas started following him; and (6) defendant and his passenger were both Hispanic.

The behavior that prompted Agent Rojas' thoughts, according to Rojas, was that as Rojas' vehicle approached, defendant scratched his head, then quit scratching his head and gripped the steering wheel firmly, and when Rojas pulled his car alongside, neither defendant nor the passenger looked at Rojas as he looked at them. Rojas testified that he would have stopped defendant based on these observations alone.

Prior to *Cortez*, the Supreme Court held in *Brignoni–Ponce* that "when an officer's observations lead him reasonably to suspect that a particular vehicle may contain aliens who are illegally in the country, he may stop the car briefly and investigate the circumstances that provoke suspicion." 422 U.S. 873, 881, 95 S. Ct. 2574, 2580, 45 L.Ed.2d 607 (1975) (emphasis supplied). But, the suspicion must be reasonable, that is, it must be particularized such that it does more than simply describe large numbers of others who are also driving on the highways in that vicinity and at that time. The Court stated further:

> Roads near the border carry not only aliens seeking to enter the country illegally, but a large volume of legitimate traffic as well. . . . We are confident that substantially all of the traffic in [border] cities is lawful and that relatively few of their residents have any connection with the illegal entry and transportation of aliens. To approve roving-patrol stops of all vehicles in the border area, without any suspicion that a particular vehicle is carrying illegal immigrants, would subject the residents of these and other areas to potentially unlimited interference with their use of the highways, solely at the discretion of Border Patrol officers.

*Id.* at 882, 95 S.Ct. at 2581.

Under *Brignoni–Ponce*, observations that may lead to lawful immigration stops include such things as characteristics of the area, proximity to the border, usual patterns of traffic, and previous experience with alien traffic. *Id.* at 884–85, 95 S.Ct. at 2582. Mexican ancestry alone, that is, Hispanic appearance, is not enough to establish reasonable cause, but if the occupants' dress or hair style are associated with people currently living in Mexico, such characteristics may be sufficient. *Id.* at 885–87, 95 S.Ct. at 2582–83; *Graciano*, 134 Ariz. at 39 & n. 7, 653 P.2d at 687 & n. 7. The driver's behavior may be considered if the driving is erratic or the driver exhibits an "obvious attempt to evade officers." *Brignoni–Ponce*, 422 U.S. at 885, 95 S.Ct. at 2582. The type or load of the vehicle may also create a reasonable suspicion. *Id.*

In this case, Agent Rojas stopped defendant on Interstate 10, the main highway route between El Paso, Texas and Los Angeles, California. Defendant, traveling west, was a substantial distance from the Mexican border in increasingly higher traffic volume moving into the Tucson metropolitan area. Defendant's vehicle did not appear heavily loaded, and Rojas did not testify, nor was other evidence introduced, that it was a type of vehicle often used by illegal aliens. There was no indication that defendant drove erratically or that he engaged in any obvious attempt to evade Agent Rojas. Although defendant and his passenger both appeared to be Hispanic, the evidence does not suggest that their clothing or hair styles indicated that they were residents of Mexico. In sum, the agent did not advance evidence with the degree of particularity needed to create a reasonably articulable suspicion. Were we to validate this stop, investigatory stops of substantial numbers of innocent people would be permitted merely on the basis of an intuitive hunch.

In *State v. Maldonado*, the court of appeals held that an automobile stop, conducted by Border Patrol agents at approximately the same location on Interstate 10, was illegal because it was based on nothing more than the year, type, and cleanliness of the vehicle, the apparent nationality of the driver and passenger, the style of their clothing, the apparent lack of conversation between driver and passenger, and the driver's manner of

holding the steering wheel with an outstretched arm when the patrol car approached. 164 Ariz. 471, 472, 793 P.2d 1138, 1139 (App.1990). The *Maldonado* court, recognizing that the agents' observations created reasonable inferences, nevertheless held that the observations were descriptive of "too many individuals to create a reasonable suspicion that this particular defendant [was] engaged in criminal activity." *Maldonado*, 164 Ariz. at 474, 793 P.2d at 1141 (quoting *United States v. Hernandez–Alvarado*, 891 F.2d 1414, 1418–19 (9th Cir.1989)).

Similarly, Agent Rojas' observations in this case created reasonable inferences. We note, however, that many thousands of citizens and legal residents of Mexican ancestry reside in close proximity to Tucson. The only characteristic that might have set defendant apart from others—his Hispanic origin—is, standing alone, an improper reason to stop a motorist. *Brignoni–Ponce*, 422 U.S. at 886–87, 95 S.Ct. at 2583. Although defendant's appearance or aspects of his behavior may have replicated the behavior of some illegal aliens entering the United States, the same pattern is easily applicable to a large population of both United States citizens and legal immigrants. Without more clearly articulated evidence, the pattern could not create a reasonable suspicion that defendant and his passenger were in the country illegally.

■ On balance, a reasonably clear answer emerges. The Border Patrol agent needed more than he has given us to accomplish a valid stop. A mere glance of the defendant's eye, an intuitive suspicion by the agent, scratching one's head, a slouched passenger, or a firm grip on the steering wheel are insufficient, whether viewed separately or together. We acknowledge that the Border Patrol, by virtue of the collective experience of its agents, is well situated to develop illegal alien "profiles." However, when a profile, as in this record, substantially resembles the description of vast numbers of law-abiding citizens, and further observations do not develop a reasonable basis for articulable suspicion that the particular individual under observation is an illegal alien or is engaged in other criminal activity, the Fourth Amendment will not permit an automobile stop and a subsequent criminal charge. To hold otherwise would do injustice to principles of fundamental fairness established under the Constitution for the protection of all citizens, including our minority citizens.

We therefore hold that the trial court erred when it denied defendant's motion to suppress.

## DISPOSITION

We vacate the court of appeals' memorandum decision and we reverse the trial court's denial of defendant's motion to suppress. We remand the case to the trial court with instructions to conduct further proceedings consistent with this opinion.

FELDMAN, C.J., ZLAKET, V.C.J., and MOELLER and MARTONE, JJ.