688 P.2d 180

**STATE of Arizona, Appellee,**

v.

**Stanley B. NEWMAN, Joe Nathan Evans, and Jerome Edward Fields, Appellants.**

**No. 6270.**

Supreme Court of Arizona, In Banc.

Sept. 20, 1984.

Robert K. Corbin, Atty. Gen., William J. Schafer III, Chief Counsel, Criminal Div., R. Wayne Ford, Asst. Attys. Gen., Phoenix, for appellee.

Irval L. Mortensen, C. Robert Pursley, Safford, for appellants.

GORDON, Vice Chief Justice:

On July 31, 1982, Stanley B. Newman, Joe Nathan Evans, and Jerome Edwards Fields escaped from the Fort Grant Training Center, a minimum security institution operated by the Arizona Department of Corrections. On August 3, 1982, they confronted seventeen-year-old Kelly Shannon as he entered his Graham County home. Armed with weapons they obtained from

the Shannon residence, they forced young Shannon to drive them out of the state. Shannon, with his vehicle, was released unharmed in Texas approximately twelve hours after the initial encounter.

Upon their arrests, each of the three appellants was charged with ten counts: Count I, second degree escape; Count II, dangerous or deadly assault by a prisoner; Count III, aggravated assault; Count IV, kidnapping; Count V, second degree burglary; Count VI, armed robbery; Count VII, theft of property (cash, groceries, and the weapons) valued between $500 and $1000; Count VIII, theft of property (the vehicle) valued more than $1000; Count IX, conspiracy to commit kidnapping and theft; and Count X, promoting prison contraband. Prior to trial, each appellant pled guilty to the escape count (Count I). After the state's presentation of evidence, the trial court granted a directed verdict on the promoting prison contraband count (Count X). The remaining eight counts were submitted to the jury. The jury returned guilty verdicts on Counts II, III, IV, V, VI, VII, and IX. On Count VIII, each defendant was found guilty of the lesser included offense of unlawful use of a means of transportation. Each appellant was sentenced as follows: Count I (escape), six years consecutive to the sentences then being served; Count II (dangerous or deadly assault by a prisoner), life imprisonment consecutive to the sentences then being served; Count III (aggravated assault), twenty years concurrent to the escape and deadly assault sentences; Count IV (kidnapping), twenty years consecutive to the escape and deadly assault sentences; Count V (burglary), twenty years concurrent to the escape and deadly assault sentences; Count VI (armed robbery), twenty-eight years consecutive to the escape, deadly assault, and kidnapping sentences; Count VII (theft of property valued between $500 and $1000), twelve years concurrent to the escape and deadly assault sentences; Count VIII (unlawful use of transportation), four and one-half years concurrent with the escape and deadly assault sentences; and Count IX (conspiracy), twenty-eight years consecutive to all other sentences. Each of the appellants filed timely notice of appeal from the judgments of guilt and the sentences imposed. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. § 13–4031.

In their joint appellate briefs, appellants raise three issues:

1. whether Shannon's identification of them at trial was tainted by unduly suggestive pre-trial procedures;

2. whether their motion for a directed verdict on Count II was improperly denied; and

3. whether the sentences for kidnapping, armed robbery, and conspiracy should have been concurrent to, rather than consecutive to, each other.

### PRE–TRIAL IDENTIFICATION

Appellants assert that Shannon's identification of them after the incident was the result of an unduly suggestive identification process and that his identification of them at trial was thereby tainted. We have recently reviewed the procedure for evaluating such claims. *See State v. McCall*, 139 Ariz. 147, 677 P.2d 920 (1983), *cert. denied,* — U.S. —, 104 S.Ct. 2670, 81 L.Ed.2d 375 (1984). There, we stated that "[e]ven where a pre-trial identification process is unduly suggestive, the resultant in-court identification is admissible if, in view of the totality of the circumstances, the in-court identification is reliable." (citation omitted) *Id.* at 154, 677 P.2d at 927.

We agree with appellants that the identification process in this case was unduly suggestive. On the day following the kidnapping, Shannon was shown three "escape fliers" which pictured each of the appellants. From the fliers, he knew that the men in the pictures had been inmates at Fort Grant, had escaped from Fort Grant, and had committed the various crimes which had resulted in their confinement. The danger that a witness or a victim will make an incorrect identification is heightened when authorities display only a single

individual who generally resembles the person described by the victim or witness. *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). We hold that the single photograph showing was unduly suggestive. *Cf. State v. Ware*, 113 Ariz. 337, 554 P.2d 1264 (1976).

■ Despite finding that the identification process was suggestive, we hold that there were significant indicia of reliability surrounding Shannon's identification of appellants and that there was no error in allowing him to identify appellants during their trial. Factors considered in this determination include:

"(1) the opportunity of the witness to view the criminal at the time of the crime,

(2) the witness' degree of attention,

(3) the accuracy of the witness' prior description of the criminal,

(4) the level of certainty demonstrated by the witness at the confrontation, and

(5) the length of time between the crime and the confrontation."

*State v. McCall, supra*, at 154, 677 P.2d at 927. Shannon testified at the hearing on the admissibility of identification evidence that he had been with appellants for several hours during the kidnapping, that he had never been blindfolded or had his vision obstructed in any way, that it had been daylight for much of the time he was with appellants, that he and appellants had all sat in the cab of his pickup truck during most of their travels, that he had focused his attention on appellants, and that he had been able to clearly see and remember their faces, heights, weights, and clothing. He testified that he had a clear recollection of their faces even before viewing the photographs and that, based on his own perceptions and independent recollection of the incident, he could have identified appellants without having seen the photographs. Based on the totality of the circumstances in this case, we find no error in the trial court's refusal to suppress the identifications.

## DENIAL OF THE DIRECTED VERDICT MOTION

Appellants contend that a directed verdict of acquittal should have been granted on Count II, dangerous or deadly assault by a prisoner. A.R.S. § 13–1206 provides:

"A person, while in the custody of the department of corrections, a law enforcement agency or county or city jail, who commits an assault using or exhibiting a deadly weapon or dangerous instrument or who intentionally or knowingly inflicts serious physical injury upon another person is guilty of a felony and upon conviction shall be sentenced to life imprisonment and shall not be eligible for suspension or commutation of sentence, probation, parole, work furlough or release from confinement on any other basis except as specifically authorized by § 31–233, subsection A or B until such person has served not less than twenty-five years. A sentence imposed pursuant to this section shall be consecutive to any other sentence presently being served or imposed upon defendant."

Appellants argue that, as of the moment of their escape, they were no longer in the "custody" of the Department of Corrections and, therefore, they could not have violated A.R.S. § 13–1206.

"Custody" is not defined within Chapter 12 of our Criminal Code, A.R.S. § 13–1201 *et seq.* Our legislature has only defined the word as it relates to escape offenses. In that context, "custody" means

"the imposition of actual or constructive restraint pursuant to an on-site arrest or court order but does not include detention in a correctional facility, juvenile detention center or state hospital."

A.R.S. §§ 13–2501(3), 31–341(2). Appellants urge that this definition should apply to A.R.S. § 13–1206 and that, under such definition, they were not in "custody" at the time of their assault on Shannon.

■ We hold that the definition of "custody" found in A.R.S. § 13–2501(3) and in A.R.S. § 31–341(2) does not apply to A.R.S. § 13–1206. That definition, in addition to

being limited to the articles in which it appears, limits "custody" in such a way that inmates within a correctional facility are not in "custody." Use of this limited definition would not fulfill the intent of the legislature in enacting A.R.S. § 13–1206.

Our legislature enacted A.R.S. § 13–1206 in 1978 "in response to increasing violence [that year] among prisoners * * *." Gerber, Criminal Law of Arizona 176 (1978). As part of the same bill, the legislature amended A.R.S. § 13–703 to provide that commission of first degree murder "while in the custody of the department of corrections, a law enforcement agency or county or city jail" is an aggravating circumstance relevant to a sentencing court when considering imposition of the death penalty. *See* 1978 Session Laws, Ch. 215, § 2. In discussing the legislative intent of that provision, we have said:

> "The legislative intent of this section is to protect the guards and other inmates at [penal] institutions where a defendant is confined and to discourage violence by incarcerated persons."

*State v. Gillies*, 135 Ariz. 500, 512, 662 P.2d 1007, 1019 (1983). The same intent can be inferred from the enactment of A.R.S. § 13–1206.

To give effect to this intent, the word "custody" in A.R.S. § 13–1206 must be read to mean the imposition of actual or constructive restraint pursuant to an on-site arrest or court order or pursuant to detention in a correctional facility, juvenile detention center, or state hospital. This definition also comports with the common usage of the word "custody." *See* A.R.S. § 1–213 ("Words and phrases shall be construed according to the common and approved use of the language.").

Having defined "custody" for purposes of A.R.S. § 13–1206, we must now deter-

mine whether this element was proven against appellants or whether a directed verdict of acquittal should have been entered on this count.

██ At the time of their assault on Shannon, appellants had left the confines of the Fort Grant Training Center. They had left the facility without the permission of the Department of Corrections and were acting without control by the Department of Corrections. They were not subject to *actual restraint* by the Department of Corrections when the assault occurred.

The state argues, however, that appellants were under the *constructive restraint* of the Department of Corrections at the relevant time and that the convictions should stand. The state asserts that being in "custody" is a status shared by all persons sentenced to prison and that the status continues from the beginning of incarceration until a court or the Board of Pardons and Paroles orders a release. As its sole authority for this assertion, the state cites A.R.S. § 31–201.01(A) which provides:

> "The superintendent [of the state department of corrections] shall hold in custody all persons sentenced to the state prison under the law and shall hold such persons for the term directed by the court or for such other period of time as may be ordered by the board of pardons and paroles, subject to law."

This statutory custody does not rise to the level of even constructive restraint.[1] Rather, it is merely the statutory authority given the Department of Corrections for holding individuals in custody.

When, as in the case before us, a prisoner has escaped from all constraint of the Department of Corrections, it would be too great a legal fiction to maintain that he or

---

1. We do not reach the issue of defining "constructive restraint." We note that the legislature has used various terms to denote levels of custody falling short of actual restraint. *See, e.g.,* A.R.S. § 31–233.01(A) (an inmate on work furlough from the Department of Corrections is in the "legal custody" of the department); A.R.S. § 31–234(C) (a prisoner transferred to a city or

county facility remains in the "constructive custody" of the Director of Corrections); A.R.S. § 31–412(A) (a parolee is in the "legal custody" of the Department of Corrections); *see also State v. Gillies, supra,* at 512, 662 P.2d at 1019 (prisoner on work furlough pursuant to A.R.S. § 31–234 is not in "custody" for purposes of A.R.S. § 13–703(F)(7)).

she was in the custody of that department. We hold, therefore, that appellants were not in the custody of the Department of Corrections at the time they assaulted Shannon and that a directed verdict of acquittal should have been entered in their favor. The trial court's judgments of guilt on Count II, dangerous or deadly assault by a prisoner, are reversed as to each appellant; the sentence imposed on each appellant for this count is vacated.

We recognize that our holding creates an anomaly in the law. The same act committed by the same prisoner is treated differently depending on whether it was committed just prior to or just subsequent to an escape. In reaching our conclusion, we have attempted to ascertain the legislature's intent rather than attempt judicial legislation. If the legislature finds our determination of its intent to be incorrect or if the legislature wants to include offenses such as the instant one within the scope of A.R.S. § 13–1206, it is more appropriate that the Legislature declare its intent than for us to do so.

### CONSECUTIVE SENTENCING

■ Appellants argue that the sentences for deadly assault by a prisoner, kidnapping, armed robbery, and conspiracy should have been made concurrent to one another rather than consecutive. They contend that in this case the consecutive sentencing violates A.R.S. § 13–116 which provides in part:

"An act or omission which is made punishable in different ways by different sections of the laws may be punished under both, but in no event may sentences be other than concurrent."

The "identical elements" test is used to determine whether one act of a defendant has been punished more than once. *State v. Rumsey*, 130 Ariz. 427, 430, 636 P.2d 1209, 1212 (1981). Under this test, the court must eliminate the evidence supporting the elements of one charge and determine whether the remaining evidence supports the elements of the other charge(s). *Id.* Because we have held that appellants should have received a directed verdict on the deadly assault by a prisoner count, we consider only the charges of kidnapping, armed robbery, and conspiracy.

■ The elements of kidnapping in this instance are (1) knowingly, (2) restraining another person, (3) with the intent, (4) to place the victim in a reasonable apprehension of imminent physical injury or to seize or exercise control over a vehicle. *See* A.R.S. § 13–1304(A). Kidnapping was accomplished when appellants forced Shannon, at gunpoint, to leave his home, enter his vehicle, and transport them as they directed.

■ The elements of armed robbery are (1) the taking of any property, (2) of another, (3) from his or her person or immediate presence, (4) against his or her will, (5) by using or threatening to use force, (6) with the intent either to coerce surrender of the property or to prevent resistance to such person taking or restraining property, (7) where the perpetrator is armed with a deadly weapon or uses or threatens to use a deadly weapon or dangerous instrumentality. A.R.S. §§ 13–1902, –1904.[2] Armed robbery was accomplished when appellants forced Shannon, at gunpoint, to give them his money.

■ The elements of conspiracy are (1) an intent to promote or aid the commission of an offense, (2) an agreement with one or more persons that one of them or another person will engage in conduct constituting the offense, and (3) an overt act committed in furtherance of the offense. A.R.S. § 13–1003. An overt act committed in furtherance of the offense of theft occurred when, planning on driving Shannon's vehicle out of the state themselves, appellants forced Shannon to relinquish the keys to his vehicle. Appellants argue that, because they were found not guilty of theft of the vehicle, they could not have con-

---

**2.** These statutes were amended in ways not relevant to this matter by 1983 Sessions Laws, Ch. 129, § 1.

spired to commit the theft. The fact that an offense remains inchoate or that an attempted offense is not completed does not preclude a conviction for conspiracy to commit that offense. *See State v. Gunnison,* 127 Ariz. 110, 618 P.2d 604 (1980). The completed crime of conspiracy to commit theft occurred with the taking of Shannon's keys.

 Applying the "identical elements" test to these facts, we find that, with the elimination of the evidence supporting any one of the charges, sufficient evidence exists to support the elements of the other two. The trial court did not violate A.R.S. § 13–116 by imposing consecutive sentences on appellants for the kidnapping, armed robbery, and conspiracy counts.

In addition to considering each issue raised by appellants, we have reviewed the record for fundamental error pursuant to A.R.S. § 13–4035. We have found none. The judgments of guilt and the sentences imposed are affirmed as to Counts I, III, IV, V, VI, VII, VIII and IX. The judgments of guilt on Count II are reversed and the sentences imposed for Count II are vacated.

HOLOHAN, C.J., and HAYS, CAMERON and FELDMAN, JJ., concur.