845 P.2d 1119

**STATE of Arizona, Appellee,**

v.

**Alfonso Machado SAEZ, Appellant.**

**Nos. 1 CA–CR 90–0135,
1 CA–CR 90–0136.**

Court of Appeals of Arizona,
Division 1, Department D.

June 25, 1992.

Review Denied March 2, 1993.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Div., and Mark E. Dwyer, Asst. Atty. Gen., Phoenix, for appellee.

Robert C. Clarke, Yuma, for appellant.

## OPINION

EHRLICH, Judge.

Alfonso Machado Saez ("defendant") was indicted in Yuma County Cause No. 15990 on two class 2 felonies: importation of a narcotic drug (cocaine) and possession of a narcotic drug (cocaine) for sale. In Yuma County Cause No. 16080, the defendant was indicted on five counts of sale of a narcotic drug (cocaine), class 2 felonies; one count of conspiracy to sell a narcotic drug (cocaine), a class 2 felony; and one count of attempted sale of a narcotic drug (cocaine), a class 3 felony. The indictments were joined for a jury trial. One count of a sale was dismissed; the defendant was found guilty on all of the remaining counts.

Following the defendant's conviction, the trial court imposed concurrent aggravated sentences of 10.5 years for importation of a narcotic drug and possession of a narcotic drug for sale. It imposed consecutive ag-

gravated terms of 10.5 years on each of the four counts of sale of a narcotic drug. Finally, the court imposed aggravated terms of 10.5 years and 7.5 years on the conspiracy and attempted sale counts, to be served concurrently with each other but consecutively to the other sentences.

The defendant appealed from his convictions and sentences, raising the following issues:

1. Whether the court erred in denying his motion to suppress the cocaine seized at the time of his arrest;

2. Whether there was sufficient evidence to support his conviction of conspiracy to sell a narcotic drug;

3. Whether there was sufficient evidence to support his conviction of attempted sale of a narcotic drug; and

4. Whether his convictions for sale of a narcotic drug should be vacated because they rest upon the unqualified expert testimony of the buyers, uncorroborated by a chemical analysis.

## FACTUAL BACKGROUND [1]

Gilford Anderson, a narcotics informant, testified at trial that he approached Virginia Ramos in June 1989 and asked for her help in buying a kilogram of cocaine. Ramos agreed to help by locating a possible source. Later in the day, Ramos and her friend, Dorothy Steele, drove Anderson from his motel to Ernie's Burgers. The defendant arrived and said that he had heard that the informant was interested in buying cocaine; he added that he could obtain a kilogram of cocaine for $8000 if Anderson would accompany him to Los Angeles. Anderson departed with the understanding that, if he wanted to go to California, he would meet the defendant at the restaurant the following day.

Steele and Ramos testified about events leading to the meeting at Ernie's. Ramos

said that she contacted the defendant on his pager after learning of the informant's interest in buying cocaine. The defendant came to Steele's house where Ramos told him about the prospective buyer. The defendant said that he could probably get some cocaine. He then made five brief telephone calls. During these calls, the defendant spoke Spanish that neither Steele nor Ramos could understand, but Steele's telephone records showed that all of the calls were placed to Los Angeles. After he finished making the phone calls, the defendant told Ramos to bring Anderson to Ernie's Burgers so that they could talk about the transaction. The meeting ensued.

Steele described herself as a frequent purchaser and user of cocaine. She stated that she had bought the drug from the defendant on three occasions: once in July 1988, once between October and December 1988, and once at Ernie's on the day in June 1989 that she and Ramos took the informant to meet the defendant. Ramos confirmed that, on the last occasion, Steele had cocaine in her possession when she left the restaurant.

Tammy Benavides, a frequent user of cocaine and heroin, testified that she purchased cocaine from the defendant at a Yuma park in June or July 1989.

On August 28, 1989, acting on a tip from a confidential informant, law enforcement agents of the Southwest Border Alliance set up surveillance of the defendant's home in Winterhaven, California. They watched the defendant as he drove a car across the Colorado River to Yuma and headed toward Ernie's Burgers, a restaurant identified as the site of a planned cocaine sale. When the agents stopped the car near the restaurant, they saw the defendant empty a plastic bag containing a white powder into a water jug by his side. They then seized the bag and the jug. Subsequent chemical analysis of the water inside the

---

1. The evidence is viewed in the light most favorable to sustaining the verdicts, resolving all reasonable inferences against the defendant. *State*

*v. Atwood,* 171 Ariz. 576, 596, 832 P.2d 593, 613 (1992).

jug revealed the presence of 22.6 grams of cocaine, a useable quantity.

## DISCUSSION

### 1. *Denial of Motion to Suppress*

The defendant contends that the trial court erred in failing to suppress evidence—the water jug, a plastic bag and diluted cocaine—seized when the agents stopped his vehicle. He claims that the stop of his vehicle amounted to an "arrest" without probable cause in violation of the Fourth Amendment to the United States Constitution. The state responds that what occurred was a proper "investigative stop" premised on the tip of a reliable informant and corroborated by the agents' observations. The subsequent arrest of the defendant and the seizure of evidence was proper, the state maintains, because it was based upon probable cause supplied when the defendant was observed dumping a plastic bag containing white powder into the water jug.

After a hearing, the trial court denied the motion to suppress. On appeal, its ruling will not be disturbed absent a "clear abuse of discretion," *State v. Atwood*, , 171 Ariz. 576, 603, 832 P.2d 593, 620 (1992), which we do not find in this case.

The stop of an automobile by police is a seizure for purposes of the Fourth Amendment. *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 694, 66 L.Ed.2d 621 (1981); *Delaware v. Prouse*, 440 U.S. 648, 661, 99 S.Ct. 1391, 1400, 59 L.Ed.2d 660 (1979); *State v. Graciano*, 134 Ariz. 35, 37, 653 P.2d 683, 685 (1982). A tip from a reliable informant can provide an adequate basis for a stop. *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972), citing *Terry v. Ohio*, 392 U.S. 1, 24, 88 S.Ct. 1868, 1881, 20 L.Ed.2d 889 (1968); *see Florida v. Bostick*, — U.S. —, —, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991).

The record showed that the informant had a history of giving reliable infor-

mation that led to the arrest of six suspects and the conviction of four. In this case, the informant told officers that the defendant was going to make a sale of cocaine at Ernie's around 1:00 p.m. Police surveillance of the defendant as he drove toward Ernie's at about 12:40 p.m. tended to corroborate that information. Such corroborative circumstances support a finding of reasonable suspicion. *Alabama v. White*, 496 U.S. 325, 325, 110 S.Ct. 2412, 2413, 110 L.Ed.2d 301 (1990).

After the agents stopped the defendant's car, they observed him dumping white powder into the water jug. This observation supplied probable cause for the defendant's arrest. The seizure of the plastic bag and the jug from the passenger compartment of the vehicle was valid incident to that arrest. *New York v. Belton*, 453 U.S. 454, 460–61, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981).

Contrary to the defendant's argument, his arrest was not premature because the agents approached his car with guns drawn. Before they stopped the defendant, the agents had information that he was in possession of weapons. Police are permitted to draw their weapons when they have reasonable basis to fear for their safety; by doing so, they do not convert an investigative stop into an arrest. *United States v. Hensley*, 469 U.S. 221, 235, 105 S.Ct. 675, 683, 83 L.Ed.2d 604 (1985) (officer approached stopped car with service revolver drawn; such "conduct was well within the permissible range in the context of suspects who are reported to be armed and dangerous").

### 2. *Sufficiency of the Evidence*

The defendant challenges the sufficiency of the evidence supporting his convictions for (1) conspiracy to sell a narcotic drug, (2) attempted sale of a narcotic drug and (3) sales of a narcotic drug. The verdicts must be upheld if supported by "substantial evidence," in other words, evidence that would convince an unprejudiced think-

ing mind of the truth of the fact for which the evidence was presented. *Atwood,,* 171 Ariz. at 597, 832 P.2d at 614. " 'If reasonable [persons] may fairly differ as to whether certain evidence establishes a fact in issue, then such evidence must be considered as substantial.' " *Id.,* quoting *State v. Tison,* 129 Ariz. 546, 553, 633 P.2d 355, 362 (1981), *cert. denied,* 459 U.S. 882, 103 S.Ct. 180, 74 L.Ed.2d 147 (1982).

### A. Conspiracy to sell a narcotic drug

The defendant complains that there is insufficient evidence to support the conspiracy conviction because there was no proof that he consummated an agreement with Anderson to sell the informant cocaine. This argument is meritless.

■ A conviction for conspiracy requires proof of (1) an intent to promote or aid the commission of an offense, (2) an agreement among one or more persons that one of them or another person will engage in conduct constituting the offense and (3) an overt act committed in furtherance of the offense. Ariz.Rev.Stat.Ann. section ("A.R.S. § ") 13–1003 (1989); *State v. Newman,* 141 Ariz. 554, 559, 688 P.2d 180, 185 (1984). The indictment specifically charged the defendant with conspiring with Steele and Ramos to sell cocaine. There was sufficient evidence to support this allegation.

■ When Ramos told the defendant of Anderson's interest, the defendant told her that he probably could obtain cocaine to sell to Anderson. He then made telephone calls to Los Angeles. After the calls, the defendant told Ramos to bring Anderson to Ernie's for a meeting. From this evidence, the jury could reasonably infer the defendant's intent and an agreement between him and Ramos to sell cocaine to Anderson. Ramos and Steele subsequently took Anderson to Ernie's where the defendant told Anderson that he could obtain cocaine if he travelled with him to Los Angeles. This evidence provided sufficient proof of the defendant's intent and of overt acts in furtherance of the agreement. The fact

that no sale occurred or that the defendant and Anderson failed to reach an agreement is immaterial. That an offense remains inchoate or that an attempted offense is not completed does not preclude a conviction for conspiracy. *Newman,* 141 Ariz. at 560, 688 P.2d at 186; *State v. Gessler,* 142 Ariz. 379, 383, 690 P.2d 98, 102 (App.1984).

### B. Attempted sale of a narcotic drug

■ The defendant was convicted of attempting to sell a narcotic drug under A.R.S. § 13–1001(A). The statute provides, in pertinent part:

A person commits attempt if, acting with the kind of culpability otherwise required for the commission of an offense, such person:

\* \* \* \* \* \*

2. Intentionally does ... anything which, under the circumstances as such person believes them to be, is any step in a course of conduct planned to culminate in commission of an offense....

The defendant complains that, even if there was sufficient evidence of his intent to sell a narcotic drug, there was insufficient proof that he took "any step in a course of conduct" toward commission of that offense. His argument is mistaken. There was ample proof that the defendant intended to sell cocaine when he met with Ramos, well before his meeting with Anderson. His actions after he told Ramos that he probably could obtain cocaine—calling Los Angeles five times, arranging to meet with Anderson and going to Ernie's for that meeting—could rationally be viewed by the jury as steps planned to culminate in commission of the sales offenses.

### C. Sales of narcotic drugs

■ The defendant contends that the evidence supporting his four convictions for sale of a narcotic drug was insufficient because it was based solely on the testimony of the drug purchasers. He complains

that Steele and Benavides were not sufficiently qualified as "experts" to testify that the substance that they purchased was cocaine.

■ Whether a drug abuser may offer an expert opinion that a substance is a narcotic drug is a novel question in Arizona. A witness may be qualified as an expert on the basis of "knowledge" or "experience," as well as by training or education. Ariz.R.Evid. 702; *State v. Superior Court In and For Pima County*, 152 Ariz. 327, 330, 732 P.2d 218, 221 (App. 1986). The majority of jurisdictions addressing the issue have held that drug abusers or addicts may possess sufficient qualifications to testify about matters at issue in a narcotics prosecution. *E.g., United States v. Johnson*, 575 F.2d 1347, 1360–61 (5th Cir.1978), *cert. denied*, 440 U.S. 907, 99 S.Ct. 1213, 59 L.Ed.2d 454 (1979) (witness' expertise to testify on foreign source of marijuana came from his experience of being around substance a "great deal" and smoking it more than 1000 times); *United States v. Atkins*, 473 F.2d 308, 313 (8th Cir.), *cert. denied*, 412 U.S. 931, 93 S.Ct. 2751, 37 L.Ed.2d 160 (1973) (heroin user could testify as expert and identify substance as heroin); *Ewing v. United States*, 386 F.2d 10, 15 (9th Cir. 1967), *cert. denied*, 390 U.S. 991, 88 S.Ct. 1192, 19 L.Ed.2d 1299 (1968) (witness qualified as expert to identify substance as marijuana based upon knowledge and previous use); *Pettit v. State*, 258 Ind. 409, 281 N.E.2d 807, 808 (1972) (witness familiar with heroin could identify it as drug he injected into his body); *State v. Neal*, 624 S.W.2d 182, 184 (Mo.App.1981) (witness who used marijuana daily and could identify it by sight and use qualified as expert to identify substance); *People v. Boyd*, 65 Mich.App. 11, 236 N.W.2d 744, 747 (1975) (witness who used heroin or cocaine hundreds of times qualified as expert to identify heroin). *See generally Competency of Drug Addict or User to Identify Suspect Material as Narcotic or Controlled Substance*, 95 A.L.R.3d 978 (1979 and Supp.

1991.) The rationale for admitting such expert testimony was articulated by the court in *Boyd*, 236 N.W.2d at 746:

> [T]here are two basic types of expert witnesses, those with academic training and those with practical experience. However, even those with the necessary academic training must demonstrate that they understand the particular fact situation. It is possible that someone with practical experience will be more of an expert witness than one with academic training in the area.
>
> In this regard a properly qualified [drug] addict may be the most qualified expert witness.

(Citations omitted.)

Even the jurisdictions which have found that in particular cases a drug user could not testify as an expert have not precluded the possibility that under different circumstances such evidence would be admissible. For example, in *People v. Kenny*, 30 N.Y.2d 154, 331 N.Y.S.2d 392, 393, 282 N.E.2d 295, 296 (N.Y.App.1972), the court found that a witness was not qualified to identify a drug when he had only two previous experiences with it. The court concluded that "[t]hese isolated experiences, one of which is before the time charged in the indictment, do not afford a reliable basis to establish the technical identity of the drug which is the essence of the crime charged." *Id.* However, the court implied that under other circumstances a drug user who has had more extensive experience with drugs may qualify as an expert witness in the area. *Id.* 331 N.Y.S.2d at 395, 282 N.E.2d at 297.

Similarly, the court in *People v. McLean*, 56 Cal.2d 660, 16 Cal.Rptr. 347, 349, 365 P.2d 403, 405 (1961), *cert. denied*, 370 U.S. 958, 82 S.Ct. 1613, 8 L.Ed.2d 824 (1962), found that a 16–year–old girl who had smoked marijuana seven times was not qualified to testify as to whether what she smoked during her second experience was marijuana. The court based this conclusion on its finding that "the witness did not

**630**

know what marijuana was or its effects." *Id.*

Whether a witness possesses sufficient qualifications to testify as an expert is a matter within the trial court's discretion and that determination will not be upset on appeal in the absence of clear abuse. *State v. Dixon*, 153 Ariz. 151, 155, 735 P.2d 761, 765 (1987). There was no abuse of discretion in this case. Steele testified that she had used cocaine on at least 50 occasions and had seen it at least 100 times. She was familiar with its appearance, packaging, price, the way it was ingested and with its effect on her. Similarly, Benavides testified that she had used cocaine more than 100 times, knew how it was packaged and priced and was familiar with its effects. This testimony was ample to establish the witnesses' expert qualifications on the basis of knowledge and experience.

Steele and Benavides testified that the substance they had received from the defendant at the time of each sale appeared to be cocaine. This was confirmed by the narcotic effect produced by the substance when they used it soon afterward. Further, Steele's and Benavides' observations were corroborated by police regarding the going price and typical packaging of cocaine. Additionally, Ramos testified that she had seen Steele in possession of cocaine after the meeting with Anderson at Ernie's. This evidence was sufficient to sustain the jury's verdicts. In light of this conclusion, it is immaterial that no chemical analysis was performed on the cocaine sold by the defendant. *State v. Nightwine*, 137 Ariz. 499, 503, 671 P.2d 1289, 1293 (App. 1983) (circumstantial evidence, including statements of co-conspirators and price paid, sufficient to sustain conviction for cocaine offenses despite absence of chemical analysis); *State v. Ampey*, 125 Ariz. 281, 282, 609 P.2d 96, 97 (App.1980) (evidence sufficient to establish possession of marijuana on basis of police officer's observation and defendant's admission).

## CONCLUSION

Pursuant to A.R.S. § 13–4035, we have reviewed the record for fundamental error and have found none. The defendant's convictions and sentences are affirmed.

TAYLOR, P.J., and GERBER, J., concur.