31 P.3d 857

**The STATE of Arizona, Appellee,**

v.

**Jerry Donald BASS, Appellant.**

**No. 2 CA–CR 00–0237.**

Court of Appeals of Arizona,
Division 2, Department B.

Sept. 26, 2001.

Janet Napolitano, Arizona Attorney General, By Randall M. Howe and Joseph T. Maziarz, Phoenix, for Appellee.

Susan A. Kettlewell, Pima County Public Defender, By Susan M. Quillin, Tucson, for Appellant.

## OPINION

**DRUKE, J.**

¶ 1 Appellant Jerry Donald Bass was found guilty after a jury trial of conspiracy to commit sexual conduct with a minor under the age of fifteen, a class two felony. The trial court suspended the imposition of sentence, placed Bass on intensive lifetime probation, and ordered him to register as a sex offender. We agree with Bass that the court could not place him on lifetime probation but find no merit to the other issues raised on appeal.

### Sufficiency of Evidence

¶ 2 Bass first contends the evidence was insufficient to support the conspiracy conviction. Specifically, he claims the state was unable to demonstrate that he had entered into an agreement to have sexual conduct with a minor. In determining the sufficiency of evidence, we view the evidence and the inferences from it in the light most favorable to sustaining the jury verdict. *State v. Spencer*, 176 Ariz. 36, 859 P.2d 146 (1993). We do not reweigh the evidence on appeal and resolve any evidentiary conflicts in favor of upholding the verdict. *State v. Girdler*, 138 Ariz. 482, 675 P.2d 1301 (1983). We will set aside a guilty verdict only if it clearly appears that the evidence is insufficient upon any hypothesis to support the verdict. *State v. Arredondo*, 155 Ariz. 314, 746 P.2d 484 (1987).

¶ 3 The evidence here showed that Bass engaged in Internet communications with Tucson Police Department Detective Uhall, who portrayed himself as a thirteen-year-old Tucson girl named "Keri." Although their communications were initially innocent, they eventually became sexually explicit, and included reciprocal desires to "make love" and plans where to do so after Bass arrived in Tucson from his residence in Alamagordo, New Mexico. Bass was arrested while attempting to meet "Keri" at a Tucson city park. We find this evidence sufficient to establish that an agreement existed. "Any action sufficient to corroborate the existence of an agreement to commit the unlawful act and to show that it is being put into effect supports a conspiracy conviction." *Id.* at 316–17, 746 P.2d at 486–87, *citing State v. Verive*, 128 Ariz. 570, 581, 627 P.2d 721, 732

(App.1981). *See also State v. Avila*, 147 Ariz. 330, 710 P.2d 440 (1985) (agreement may be inferred from circumstantial evidence).

¶ 4 Bass nonetheless argues that because the offense of sexual conduct with a minor necessarily requires "an agreement ... of two people," the conspiracy to commit the offense is "actually part of the offense and not a separate crime." In support, Bass relies on *State v. Chitwood*, 73 Ariz. 161, 239 P.2d 353 (1951), in which the supreme court stated the following rule: "[W]here the agreement is to commit an offense which can only be committed by the concerted action of the two persons to the agreement, [such as adultery or bribery, the] agreement does not amount to a conspiracy.... Under such circumstances the agreement ... merge[s] in the completed act." This rule has no application here, however.

¶ 5 Unlike adultery and bribery, sexual conduct with a minor is not an offense that "can only be committed by the concerted action of the two persons to the agreement." *Id.* Under A.R.S. § 13–1405, "[a] person commits sexual conduct with a minor by intentionally or knowingly engaging in sexual intercourse or oral sexual contact with any person who is under eighteen years of age." Neither the statute's language nor our jurisprudence indicates that the offense occurs only when the minor acts in concert with the perpetrator; the offense occurs regardless of whether they act in concert. Moreover, when the sexual conduct might involve a minor under the age of fifteen, as in this case, there can be no "agreement" to commit the offense because such a minor is legally incapable of agreeing to the sexual conduct. *See State v. Getz*, 189 Ariz. 561, 944 P.2d 503 (1997).

¶ 6 In a related argument, Bass asserts that because of the minor's legal incapacity to agree to the sexual conduct, "it is impossible to conspire with the victim" to commit the offense. We disagree. Arizona recognizes unilateral conspiracies under those circumstances set forth in A.R.S. § 13–1006. The circumstance set forth in § 13–1006(A)(1) applies here. It provides that it is not "a defense to a prosecution for ... conspiracy ... that a person ... with whom the

defendant conspired could not be guilty of committing the offense because ... [s]uch person is, by definition of the offense, legally incapable in an individual capacity of committing the offense." The statute thus specifically precludes the defense of legal incapacity that Bass seeks to assert. *Cf. State v. Chan,* 188 Ariz. 272, 935 P.2d 850 (App.1996) (unilateral conspiracy theory applies to defendant who conspires with government informant); *State v. Felkins,* 156 Ariz. 37, 749 P.2d 946 (App.1988) (under § 13–1006, defendant can conspire with county investigator to traffic in stolen property); *State v. Villarreal,* 136 Ariz. 485, 487 n. 1, 666 P.2d 1094, 1096 n. 1 (App.1983) (in Arizona, "a person can be convicted of a conspiracy if the person with whom he conspired only feigned acquiescence in the plan"). As a respected commentator has observed regarding § 13–1006: "An individual who joins with others to achieve a crime is hardly less responsible because he or she joined with an incompetent, an undercover agent, a person subsequently granted immunity, or with someone otherwise incapable of being prosecuted for that crime." 1 Rudolph J. Gerber, *Criminal Law of Arizona* 1006–2 (2d ed.1993).

### Admission of Evidence

 ¶ 7 After Bass was arrested, police found condoms, baby oil, and a Polaroid camera in his truck. Bass moved in limine to bar Detective Uhall from testifying that, based on his experience, it is common for adult males who are sexually interested in young females to have such items in their possession. Bass argued that such testimony would constitute inadmissible "profile" evidence prohibited by *State v. Lee,* 191 Ariz. 542, 959 P.2d 799 (1998). Although the trial court agreed the detective could not use the words "pedophile" or "child predator" while testifying, it allowed Detective Uhall to testify as follows:

Q. [PROSECUTOR] All right. Taking each one of these three items here, are these common among adults seeking sex from young female children?

A. [UHALL] Yes, it is.

Q. The Polaroid camera, why?

A. Photographs allow you to re-visit the event.

Q. And what about the body oils?

A. Body oils are necessary for lubrication for entry.

Q. And the condoms?

A. Condoms are possibly for prevention of pregnancy.

We review a trial court's ruling on the admission of expert testimony for an abuse of discretion. *State v. Roscoe,* 184 Ariz. 484, 910 P.2d 635 (1996). We find none here.

 ¶ 8 Bass correctly argues that *Lee* prohibits the general " 'use of profile evidence to indicate guilt ... [because it] creates too high a risk that a defendant will be convicted not for what he did but for what others are doing.' " *Lee,* 191 Ariz. 542, ¶ 12, 959 P.2d 799, ¶ 12, *quoting State v. Cifuentes,* 171 Ariz. 257, 257, 830 P.2d 469, 469 (App. 1991). But *Lee* also recognized four exceptions to this general prohibition, including the use of profile evidence as rebuttal evidence, citing *United States v. Beltran–Rios,* 878 F.2d 1208 (9th Cir.1989). In *Beltran–Rios,* defense counsel attempted to establish that the defendant, charged with drug trafficking, was "a simple, poor farmer" who "dressed poorly, and did not display flashy or expensive jewelry." *Id.* at 1210. Over defense counsel's objection, the trial court allowed the government's expert to testify that drug couriers, or "mules were generally poor, sympathetic-looking individuals, who went into the drug courier trade because it is the only way for such individuals to make money quickly." *Id.* The circuit court affirmed the trial court's ruling, holding that the government could introduce profile testimony "to rebut specific attempts by the defense to suggest innocence based on the particular characteristics described in the profile." *Id.* at 1213 n. 2.

¶ 9 Here, defense counsel advised the trial court during argument on the motion in limine that she anticipated that Bass would testify "there are very innocent reasons why he had the things he did." Then, as anticipated, Bass testified that he used the oils to preserve his tattoos and keep them "from fading out," that he kept "condoms in [his] shaving kit when [he was] traveling ... [and] at home," and that he did not plan "to have sex with a willing little girl ... [or] to take

some picture[s] of [his] conquest." Based on this record, the trial court did not abuse its discretion in allowing the detective to rebut this anticipated testimony. *Lee; Beltran–Rios.*[1]

¶ 10 We also find no abuse of discretion in the trial court's denial of Bass's motion to preclude Detective Uhall from testifying about Internet conversations Bass had with "Daphne" and "Amanda14," two other imaginary teenage females created by the detective. Bass argued that these conversations were inadmissible "other acts" evidence under Rule 404(b), Ariz. R. Evid., 17A A.R.S. Again, we review the trial court's ruling for an abuse of discretion. *Roscoe.*

¶ 11 In denying the motion, the trial court ruled that the conversations with the other two teenagers were admissible to show "absence of mistake, identity, [and] plan." Even assuming we agree with Bass that the conversations were not admissible based on those exceptions to Rule 404(b), we uphold the trial court because it reached the right result. *See Gary Outdoor Adver. Co. v. Sun Lodge, Inc.*, 133 Ariz. 240, 650 P.2d 1222 (1982) (appellate court will affirm trial court that reaches correct conclusion even if for incorrect reason).

¶ 12 Conspiracy requires proof that a defendant intended "to promote or aid the commission of an offense." A.R.S. § 13–1003(A); *State v. Newman*, 141 Ariz. 554, 688 P.2d 180 (1984). Thus, to prove conspiracy in this case, the state had to establish that Bass intended to promote or aid in the commission of sexual conduct with a minor. In that regard, Bass told "Keri" in one of his last Internet conversations with her before arriving in Tucson, "I want to make love to you, baby." Similarly, in an Internet conversation with thirteen-year-old "Daphne," Bass related that it would have been "fun to share [his] sleeping bag" with her while he was camping. And Bass, who used the name "JD29," had this Internet conversation with "Amanda14":

> JD29: how long since u had sex?
>
> Amanda14: one month .. too long

JD29: yeah, I know what u mean

JD29: I'm horney as hell

JD29: I would love to put my d—— in your tight little p——

. . . .

Amanda14: how young would you like to have sex with

JD29: 13 or 14

Amanda14: that's me

JD29: yeah, it is

¶ 13 We find that Bass's Internet conversations with "Daphne" and "Amanda14" were relevant to show that Bass intended to commit sexual conduct with a minor when he agreed to meet "Keri" in Tucson. Bass had put his intent in issue by testifying that he believed "Keri" was "an adult who was … portraying [herself] as a young person," that he expected to meet an adult female when he arrived in Tucson, and that he "was not interested in having any sort of activities with a 13–year–old." Accordingly, the trial court did not abuse its discretion in admitting the conversations into evidence under Rule 404(b), Ariz. R. Evid. *See State v. Armstrong*, 176 Ariz. 470, 862 P.2d 230 (App.1993) (audiotape containing defendant's admissions properly admitted into evidence to show his intent).

## Motion for Mistrial

¶ 14 Bass contends the trial court erroneously denied his motion for a mistrial when the prosecutor asked jurors during closing rebuttal argument to convict Bass because "there are Keris" in society, and Bass must be stopped. Defense counsel objected to the statement. The trial court denied the "motion for mistrial."

¶ 15 It is within the trial court's discretion whether to grant a motion for mistrial. *State v. Hallman*, 137 Ariz. 31, 668 P.2d 874 (1983). In deciding whether a mistrial is warranted, the court must consider whether the jury heard something it should not have heard and whether it was influenced by what it heard. *State v. Gulbrandson*, 184 Ariz. 46, 906 P.2d 579 (1995). The trial court

---

1. An additional claim, that the evidence's unfair prejudice outweighed its probative value, Rule 403, Ariz. R. Evid., 17A A.R.S ., was not raised below and apparently has been waived by Bass on appeal because the reply brief does not challenge the state's waiver argument. *See State v. Gonzales*, 181 Ariz. 502, 892 P.2d 838 (1995).

must order a mistrial based upon prosecutorial misconduct if it permeates the entire trial and deprives the defendant of a fair trial. *State v. Atwood,* 171 Ariz. 576, 832 P.2d 593 (1992).

¶ 16 In his closing argument, Bass's counsel attempted to convince the jurors that the evidence demonstrated that "Keri" was not an underage female and that there were no actual "Keris" who would conduct themselves as the detective did here. To rebut that defense, the prosecutor tried to convince the jurors that indeed "Keris" did exist, contrary to Bass's claim. The prosecutor's comment was therefore a fair rebuttal to the defense claim. *State v. Hernandez,* 170 Ariz. 301, 823 P.2d 1309 (App.1991). The trial court did not abuse its discretion when it denied Bass's motion for a mistrial.

### Lifetime Probation

¶ 17 Finally, Bass claims the trial court lacked jurisdiction to place him on lifetime probation pursuant to A.R.S. § 13–902(E) and to order him to register as a sex offender pursuant to A.R.S. § 13–3821. We agree that § 13–902(E) does not apply to Bass because he was convicted of a preparatory offense, and § 13–902(E) applies only "after conviction of a felony offense or an attempt to commit any offense that is included in chapter 14 or 35.1 of this title or § 13–2923 or 13–3623." The state concedes the imposition of lifetime probation was an illegal sentence, which must be vacated even though Bass failed to object at sentencing. *See*

*State v. Bouchier,* 159 Ariz. 346, 767 P.2d 233 (App.1989). Because the lifetime probation provision must be vacated, and because it is not clear that the trial court would impose a probationary term given the statutory maximum of seven years' probation for a class two felony, the matter is remanded to the trial court to resentence Bass. *See State v. Ojeda,* 159 Ariz. 560, 769 P.2d 1006 (1989).

¶ 18 But the trial court did have the authority to require Bass to register as a sex offender. Section 13–3821(C), A.R.S., provides that a trial court may require registration by a defendant who is convicted of any violation of chapter 14 or chapter 35.1. Bass was convicted of conspiracy, a preparatory offense under chapter 10. And, as we observed in *State v. Cory,* 156 Ariz. 27, 28, 749 P.2d 936, 937 (App.1987), it is impossible to solely violate chapter 10 "since that chapter must always be viewed together with a substantive offense." In this case, the substantive offense involves a violation of chapter 14, sexual conduct with a minor.

¶ 19 The judgment of conviction is affirmed. That portion of the sentencing order placing Bass on intensive lifetime probation is vacated, and the case is remanded to the trial court for resentencing.

ESPINOSA, C.J. and HOWARD, P.J., concurring.