NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

NORA YESENIA SANDOVAL, *Appellant*.

No. 1 CA-CR 14-0242
FILED 3-10-2015

Appeal from the Superior Court in Mohave County
No. S8015CR201101237
The Honorable Steven F. Conn, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Robert A. Walsh
*Counsel for Appellee*

Mohave County Legal Advocate's Office, Kingman
By Jill L. Evans
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Margaret H. Downie delivered the decision of the Court, in which Judge Patricia K. Norris and Judge Randall M. Howe joined.

---

**D O W N I E**, Judge:

¶1 Nora Yesenia Sandoval appeals her convictions on two counts of possession of dangerous drugs for sale, two counts of possession of dangerous drugs, and three counts of possession of drug paraphernalia. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2 Based on information obtained from a confidential informant, police officers obtained a search warrant authorizing a search of Sandoval and her apartment for evidence relating to possession of methamphetamine and drug paraphernalia. The morning the search warrant was to be executed, officers saw Sandoval leave her apartment in a vehicle. They stopped the vehicle and took Sandoval to a booking facility where she was searched. Officers found a plastic bag containing a white crystal substance later determined to be 28.7 grams of methamphetamine hidden in Sandoval's underwear. Upon searching Sandoval's apartment, officers discovered a plastic bag containing 11.25 grams of methamphetamine in the pocket of a woman's jacket, two pills in a plastic baggie, hundreds of unused plastic baggies, a digital scale, and more than a thousand dollars in cash.

¶3 Three days later, having just been released from custody, Sandoval made arrangements by telephone to sell methamphetamine to a buyer. Unbeknownst to Sandoval, the buyer was cooperating with law enforcement. When Sandoval appeared at the agreed-upon meeting location, officers found her in possession of 20.6 grams of methamphetamine.

¶4 Sandoval was indicted on three counts of possession of dangerous drugs for sale (methamphetamine), a class 2 felony; one count of possession of dangerous drugs (clonazepam), a class 4 felony; and three counts of possession of drug paraphernalia, a class 6 felony. The State

2

alleged that Sandoval had four prior felony convictions for sentence enhancement purposes.

¶5         After a jury trial, Sandoval was convicted of two counts of possession of dangerous drugs for sale (methamphetamine), one count of the lesser offense of possession of dangerous drugs (methamphetamine), one count of possession of dangerous drugs (clonazepam), and three counts of possession of drug paraphernalia.  The trial court found that Sandoval had two prior historical felony convictions and sentenced her as a repetitive offender to consecutive and concurrent presumptive prison terms totaling 31.5 years.  Sandoval timely appealed.

## DISCUSSION

### I.         Motion to Suppress

¶6         Sandoval moved to suppress all evidence seized pursuant to the search warrant.  She argued the warrant was not supported by probable cause and did not authorize a search of her outside her apartment.  The trial court denied the motion, ruling that there was probable cause to issue the search warrant and that the warrant permitted officers to search Sandoval wherever she was located.

¶7         On appeal, Sandoval once again argues the affidavit submitted by the police failed to set forth probable cause for issuance of the warrant.  Specifically, she argues there were insufficient facts presented to establish the informant's reliability.

¶8         In reviewing the denial of a suppression motion, we give deference to factual findings by the trial court but review *de novo* whether the Fourth Amendment was violated. *State v. Gonzalez–Gutierrez*, 187 Ariz. 116, 118, 927 P.2d 776, 778 (1996).  The Fourth Amendment protects against unreasonable searches and seizures and states that no warrant shall issue except upon probable cause. U.S. Const. amend. IV.

¶9         In determining whether probable cause exists to issue a search warrant, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.' *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "[T]he duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Id.* at 238-39.

¶10        In an affidavit submitted in support of the search warrant, an officer avowed that a "confidential and reliable informant was legally and lawfully present at 366 Riverfront Dr., Apartment B., and observed Nora Sandoval in possession of a usable quantity of methamphetamine" within the past 72 hours.  The officer further avowed that he considered the information to be true not only because the informant had participated in controlled drug buys on at least four prior occasions, but "[w]ithin the last two months the confidential and reliable informant has also given information to [the] affiant and fellow officers about narcotics trafficking in the Mohave County area, which has been verified either through [the] affiant's personal knowledge or through short investigations."  The officer stated the informant had identified Sandoval from a photograph, pointed out Sandoval's apartment, and knew methamphetamine "on sight, its prices, and the way it is used."  Given this information, the magistrate had a substantial basis for concluding the confidential informant was reliable and that probable cause existed to issue a search warrant for both Sandoval and her apartment.  *See State v. Albert*, 115 Ariz. 354, 355, 565 P.2d 534, 535 (App. 1977); *see also* 2 Wayne R. LaFave, *Search and Seizure* § 3.3(b), at 145 & n.81 (5th ed. 2012) (prior use of informant to make controlled drug buys has "consistently been held to establish a sufficient track record to show the informant's credibility") (collecting cases).

¶11        We also disagree with Sandoval's assertion that the search warrant did not authorize officers to detain and search her outside her apartment.  The warrant stated there was probable cause to believe there was methamphetamine and other evidence pertaining to the possession of methamphetamine both on Sandoval's person and in her apartment, and it gave detailed descriptions of Sandoval and her apartment in separate paragraphs.  The warrant commanded any peace officer in Mohave County "to make a search of the above named described person(s) [and] premises."  No geographical limitation was imposed as to where the search of Sandoval could occur.

¶12        The superior court did not err by denying Sandoval's suppression motion.

## II.     Motion to Continue

¶13        Sandoval argues the trial court violated her right to counsel of choice by denying her motion to continue trial in order to retain private counsel.  Denial of a motion to continue is reviewed for abuse of discretion.  *State v. Hein*, 138 Ariz. 360, 368, 674 P.2d 1358, 1366 (1983).  The trial court has substantial discretion because it "is the only party in a position to judge

the inconvenience of a continuance to the litigants, counsel, witnesses, and the court, and further is the only party in a position to determine whether there are "extraordinary circumstances" warranting a continuance and whether "delay is indispensable to the interests of justice" as required by Arizona Rules of Criminal Procedure 8.5(b). *Id.*

**¶14**     The day before trial began, Sandoval requested a continuance to allow her to retain private counsel. Sandoval stated that her appointed counsel was not representing her well and that he was not communicating with or helping her. When asked what more she wanted her attorney to do, Sandoval stated, "I don't know, like fight a little bit more. I mean I feel that I'm going to lose, if I keep him. I feel that I might get a lot of time; and I would like an attorney that's going to fight for me more, you know." The State opposed the motion, stating it had multiple witnesses subpoenaed and ready to appear, and the prosecutor had cleared her schedule for trial.

**¶15**     The trial court noted that Sandoval had presented nothing specific as to why appointed counsel could not continue representing her. In addressing what it believed to be the true reason for the continuance request, the court stated it appeared Sandoval "thought that the day of reckoning would be farther off in the future, and that she's just having a hard time accepting the fact that her trial is starting tomorrow, and if she's found guilty she may be facing some serious consequences."

**¶16**     A criminal defendant has the right to counsel of her choosing under the Sixth Amendment to the United States Constitution and Article 2, Section 24, of the Arizona Constitution. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006); *Robinson v. Hotham*, 211 Ariz. 165, 169, ¶ 16, 118 P.3d 1129, 1133 (App. 2005). The right to counsel of choice, though, is "not absolute, but is subject to the requirements of sound judicial administration." *Hein*, 138 Ariz. at 369, 674 P.2d at 1367; *see also Wheat v. United States*, 486 U.S. 153, 159 (1988) (holding right is circumscribed and a defendant has no guarantee she will have top choice of attorney). A trial court has "wide latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar." *Gonzalez–Lopez*, 548 U.S. at 152. Notwithstanding this broad discretion, an "unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay violates the right to the assistance of counsel." *Morris v. Slappy*, 461 U.S. 1, 11–12 (1983). The wrongful denial of the right to counsel of choice is structural error. *Gonzalez-Lopez*, 548 U.S. at 150.

**¶17**     "Whether an accused's constitutional rights are violated by the denial of a request for a continuance depends on the circumstances

present in the particular case." *Hein*, 138 Ariz. at 369, 674 P.2d at 1367. We consider:

> whether other continuances were granted; whether the defendant had other competent counsel prepared to try the case; the convenience or inconvenience to the litigants, counsel, witnesses, and the court; the length of the requested delay; the complexity of the case; and whether the requested delay was for legitimate reasons or was merely dilatory.

*Id.*

**¶18** The trial court here had already granted Sandoval three prior trial continuances. Sandoval did not state when she would be able to hire new counsel or how long it would take for new counsel to prepare for trial. In contrast, not only was the State prepared for trial, but Sandoval's longtime appointed counsel was also ready to try the case as scheduled. And based on its questioning of Sandoval, the trial court could have reasonably concluded that her continuance request was not made for legitimate reasons, but for purposes of delay. We find no abuse of discretion in denying Sandoval's continuance request.

## III. Recording of Interview

**¶19** Sandoval argues the trial court erred by admitting a recording of her post-arrest interview without redacting certain statements made by the interviewing officer. At issue are the officer's statements during the interview that: 1) the police have information that Sandoval has "connections" to deal methamphetamine in amounts of "eight, twelve, sixteen ounces," and 2) law enforcement knew she was going to deliver drugs that morning and knew her suppliers based on "hundreds of hours of surveillance." Sandoval claims the admission of these statements violated the Confrontation Clause because they are testimonial hearsay and also should have been precluded under Arizona Rules of Evidence 403 and 404(b). We review a trial court's decision to admit evidence for abuse of discretion, *State v. Smith*, 215 Ariz. 221, 228, ¶ 20, 159 P.3d 531, 538 (2007), but "review de novo whether the admission of evidence violates the Confrontation Clause," *State v. Joseph*, 230 Ariz. 296, 298, ¶ 7, 283 P.3d 27, 29 (2012).

**¶20** The Confrontation Clause of the Sixth Amendment prohibits admission of testimonial hearsay statements by a non-testifying witness unless that person is unavailable and the defendant had a prior opportunity for cross-examination. *Crawford v. Washington*, 541 U.S. 36, 68 (2004). A

statement that is not admitted to prove its truth is not testimonial hearsay and does not violate the Confrontation Clause. *State v. Tucker*, 215 Ariz. 298, 315, ¶ 61, 160 P.3d 177, 194 (2007). Here, the officer's statements were not offered for their truth, but rather, to show the method of interrogation and to give context for responses and admissions made by Sandoval. Admission of the statements for these purposes does not violate the Confrontation Clause. *See State v. Boggs*, 218 Ariz. 325, 334, ¶¶ 33-35, 185 P.3d 111, 120 (2008); *State v. Roque*, 213 Ariz. 193, 214, ¶ 70, 141 P.3d 368, 389 (2006); *see also Crawford*, 541 U.S. at 59 n.9 (Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted").

**¶21**        Nor did the trial court err by not redacting the statements under Rules 403 and 404(b). Rule 404(b) states that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." As discussed *supra*, though, the statements at issue were not admitted to prove the truth of the matters asserted, *i.e.*, that Sandoval was a drug dealer, but instead were simply part of the interrogation technique used by the officer to obtain admissions from Sandoval. The officer's statements were not "other act evidence" subject to preclusion under Rule 404(b).

**¶22**        To avoid misuse of the officer's statements, the trial court gave a limiting instruction, advising jurors that the statements could not be used to establish the truth of the matters asserted. Jurors are presumed to follow their instructions. *State v. Newell*, 212 Ariz. 389, 403, ¶ 68, 132 P.3d 833, 847 (2006). Additionally, the court could have reasonably concluded that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice and therefore was not subject to preclusion under Rule 403. *See State v. Harrison*, 195 Ariz. 28, 33, ¶ 21, 985 P.2d 513, 518 (App. 1998) ("The trial court is in the best position to balance the probative value of challenged evidence against its potential for unfair prejudice."), *aff'd*, 195 Ariz. 1, 985 P.2d 486 (1999).

## IV.    Sufficiency of Evidence

**¶23**        Sandoval contends insufficient evidence supports the conviction for possession of dangerous drugs (clonazepam). Specifically, she argues the State failed to prove beyond a reasonable doubt that the pills found in her apartment were clonazepam. We review claims of insufficient evidence *de novo*, viewing the evidence in the light most favorable to upholding the verdict. *State v. Bible*, 175 Ariz. 549, 595, 858 P.2d 1152, 1198 (1993).

¶24          "Substantial evidence is proof that reasonable persons could accept as sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt."  *State v. Spears*, 184 Ariz. 277, 290, 908 P.2d 1062, 1075 (1996).  "If reasonable men may fairly differ as to whether certain evidence establishes a fact in issue, then such evidence must be considered as substantial."  *State v. Herrera*, 174 Ariz. 387, 393, 850 P.2d 100, 106 (1993). "We do not consider if we would reach the same conclusion as the trier-of-fact, but only if there is a complete absence of probative facts to support its conclusion."  *State v. Carlisle*, 198 Ariz. 203, 206, ¶ 11, 8 P.3d 391, 394 (App. 2000).

¶25          Sandoval argues the evidence was insufficient because identification of the pills was based solely on testimony of a police detective.  However, the identity of a controlled or contraband substance may be proven without chemical analysis or forensic expert testimony. *State v. Saez*, 173 Ariz. 624, 630, 845 P.2d 1119, 1125 (App. 1992); *see also State v. Nightwine*, 137 Ariz. 499, 503, 671 P.2d 1289, 1293 (App. 1983) (upholding convictions for cocaine offenses despite absence of chemical analysis); *State v. Ampey*, 125 Ariz. 281, 282, 609 P.2d 96, 97 (App. 1980) (sufficient evidence of marijuana existed based on officer's observation and defendant's admission).  Numerous courts have held that the chemical content of a tablet may be identified from its external features and the manufacturer's stamp ("trade dress"), reasoning that "the trade dress of a pill is akin to looking at a human face."  *Jones v. Commonwealth*, 331 S.W.3d 249, 255 (Ky. 2011) (collecting cases); *see also State v. Murphy*, 28 So.3d 496, 498-99 (La. App. 2009) (upholding conviction for possession of clonazepam where no chemical testing was performed and State's witness identified drug through "Just Drug Identification" website); *State v. Carter*, 981 So.2d 734, 744 (La. App. 2008) (upholding identification of hydrocodone pills by chemist and narcotics detective "via visual inspection and comparison with pictures in a book"); *Commonwealth v. Loskovic*, 307 A.2d 357, 358 (Pa. Super. 1973) (upholding officer's identification of a drug "by comparing the appearance of the capsule, by color and the manufacturer's markings, with information on dangerous drugs contained in a manual furnished by the State Police").

¶26          Here, a detective who is a supervisor with the Mohave Area General Narcotics Enforcement Team drug task force identified the two pills as clonazepam through use of a website specifically designed to help law enforcement "identify pills and get other information about drugs." The detective testified he regularly used the website and always found it to be accurate in identifying pills.  The detective also testified he confirmed the identity of the pills with a pharmacist at Walgreens.  This evidence was

more than a "mere scintilla," *see State v. Mathers*, 165 Ariz. 64, 67, 796 P.2d 866, 869 (1990), and, viewed in the light most favorable to sustaining the verdict, was sufficient to permit the jury to find beyond a reasonable doubt that the pills at issue were clonazepam.

## CONCLUSION

¶27　　　　For the reasons stated, we affirm Sandoval's convictions and sentences.



Ruth A. Willingham · Clerk of the Court
FILED: ama